Dietrich and another vs. The Madison Relief Association.

Dietrich and another vs. The Madison Relief Association.

Private Corporations: *Limits of corporate power.*

Defendant's charter declares that its business "shall be to afford relief to the widows and children of its deceased members, and to such business it shall be limited and restricted." In his application for a policy, the insured declared that in case of his death the moneys should be paid to his wife, and in case she should be dead, to his children. Afterwards, by agreement between himself and the company, he undertook to assign such moneys to it as security for his indebtedness to the company for money loaned to him. In an action by his children on the policy: *Held*, that such assignment was void for want of authority in the corporation to take it.

Ryan, C. J., dissents, at least as to the ground of decision.

APPEAL from the Circuit Court for *Dane* County.

This action was brought by the infant heirs of F. E. Dietrich (suing by guardian *ad litem*) to recover the sum of $550 alleged to be due them upon an agreement of insurance upon the life of said F. E. Dietrich, made, during his lifetime, between him and the defendant company. The defense was, in substance, that Dietrich, during his lifetime, had assigned the agreement to the company as security for certain notes executed or transferred by him to it for loans of money; that, at the time of his death, all of said notes were due and unpaid, to the amount of $519.84, leaving due the original beneficiaries only $30.16; and that defendant had tendered the amount last named to their guardian and attorney, before the commencement of this action.

The court found, in substance, the following facts: Defendant is a corporation created by and existing under ch. 315, P. & L. Laws of 1869, and was authorized to make the contract in question. The object of its organization and incorporation was to afford relief to the widows and children of its deceased members, by insuring the lives of its members on the following plan: Each applicant for membership was required to make an application in writing, in which he was to insert the name of the person or persons who should receive the insur

ance on his life, at his death; he was also to pay $3 on becoming a member, and $1 annually thereafter, and the further sum of $2.10 immediately on the death of any member. On his death, his widow or children were entitled to have a number of dollars equal to twice the number of members then composing the association, i. e., $2 from each surviving member; and this amount the defendant undertook to collect from the members for the beneficiaries without expense to them. On the 13th of January, 1869,[1] Dietrich applied for insurance on his life in the defendant association, complied with its requirements, and was duly received into membership. In his application he designated his wife, and in case of her death his children, as the persons to whom the insurance should be paid at his death. During his life, F. E. Dietrich fulfilled all his obligations as a member of the association. Defendant had due notice of his death, which occurred October 11, 1876; and thereupon it levied on its members (275 in number) the usual assessment of $2.10 each. After the assessment, and before the commencement of this action, the mother of the plaintiffs duly assigned to them all her interest in said insurance money; and plaintiffs caused due demand to be made of the defendant for the amount, which was refused. Upon these facts, the court rendered judgment in plaintiffs' favor for the full amount demanded, with interest from the commencement of the action.

During the trial, defendant made proof of the facts relied on as a defense; and it excepted to the finding of facts and conclusions of law, and appealed from the judgment.

For the appellant, a brief was filed by *Vilas & Bryant*, and there was oral argument by *Wm. F. Vilas*. They contended, 1. That the insurance contract was assignable by F. E. Dietrich; that there is nothing in the general character of the contract to prevent such an assignment (*Clark v. Durand*, 12 Wis., 223); that the earlier statute of this state defining

---

[1] This was before the passage of ch. 315 of 1869; but defendant was then doing business as a voluntary association, under a constitution which is sufficiently described in the opinion.

the rights of a married woman in a contract of insurance in which she is named as beneficiary (R. S. 1858, ch. 95, sec. 5), was virtually repealed by sec. 19, ch. 59, Laws of 1870 (Tay. Stats., 978); but that under either statute, properly construed, the beneficiary's absolute right would not attach until the occurrence of the event upon which the insurance money becomes payable by the terms of the contract. *Kerman v. Howard*, 23 Wis., 108; *Archibald v. Life Ins. Co.*, 38 id., 542; *Emerick v. Coakley*, 35 Md., 188; *Rison v. Wilkerson*, 3 Sneed, 565. Counsel also argued that the facts of the present case sufficiently illustrated the monstrous results which might flow from a different construction of the statute — the infant plaintiffs claiming here only by assignment from their mother, who, at the time of F. E. Dietrich's death, had been divorced from him and had remarried. 2. That the defendant corporation had an implied power to loan at interest the " safety fund " provided for by its constitution and by-laws, and to secure the repayment of such loans by the usual measures for that purpose (Brice's Ultra Vires, 68 et seq.; *M., W. & M. Plank Road Co. v. Plank Road Co.*, 5 Wis., 173, and Dixon's note on p. 184); and that this right could not be questioned in a collateral action, to defeat the effect of a *bona fide* contract. *Silver Lake Bank v. North*, 4 Johns. Ch., 370; *State of Indiana v. Woram*, 6 Hill, 33, 37; *Parish v. Wheeler*, 22 N. Y., 494; *R. & B. R. R. Co. v. Proctor*, 29 Vt., 93.

For the respondents, there was a brief by *Smith & Lamb*, and oral argument by *Mr. Lamb*. They contended, 1. That the general doctrine that grants of power to corporations are strictly construed, and nothing passes by implication (*Janesville Bridge Co. v. Stoughton*, 1 Pin., 667), and that a corporation can exercise only the powers expressly conferred or necessary to the performance of its corporate duties and the accomplishment of the purposes of its incorporation (Field on Corp., § 54; *Rock River Bank v. Sherwood*, 10 Wis., 236; 7 id., 69; *Clark v. Farrington*, 11 id., 306), applies with increased force where the charter expressly prohibits every other

kind of business than that specifically described; that the *implied* powers of a corporation cannot at the utmost be extended to acts which are not *in furtherance of the objects for which they were created* (*M.*, *W. & M. P. R. Co. v. W. & P. P. R. Co.*, 5 Wis., 173), and especially cannot be extended to acts which tend directly to defeat and destroy those objects; that defendant's charter makes it the sole object of the corporation to afford pecuniary relief, upon the death of a member, to his widow and children; and that the immediate and direct object and effect of a contract like that here set up as a defense, is to deprive the deceased member's widow and children of all benefit of the fund created in their behalf — to annihilate the fund so far as the beneficiaries are concerned. *Straus v. Eagle Ins. Co.*, 5 Ohio St., 59. 2. That under secs. 5 and 6, ch. 95, R. S. 1858 (first found as part of ch. 158 of 1851), in case of such an insurance for the benefit of a married woman, whether made by the husband or a third person, the husband could not make any disposition of the insurance without the wife's consent. *Gould v. Emerson*, 99 Mass., 154; *Knickerbocker Life Ins. Co. v. Weitz*, id., 157; *Burroughs v. State M. L. Ins. Co.*, 97 id., 359; *Potter v. Spilman*, 117 id., 322; *Unity Mut. L. Assurance Asso. v. Dugan*, 118 id., 219; *Swan v. Snow*, 11 Allen, 224; *Chapin v. Fellowes*, 36 Conn., 132; *Conn. Mut. Life Ins. Co. v. Burroughs*, 34 id., 305; *Eadie v. Slimmon*, 26 N. Y., 9; *Barry v. Eq. L. Ass. Soc.*, 59 id., 587; *Lockwood v. Bishop*, 51 How. Pr., 221; *Ruppert v. Union M. I. Co.*, 7 Rob., 155; *Fraternal M. L. Ins. Co. v. Applegate*, 7 Ohio St., 292; *Norwood v. Guerdon*, 60 Ill., 253; Bliss on Life Ins., ch. 10, §§ 316–17, 339–48; May on Ins., § 391. *Kerman v. Howard*, 23 Wis., 108, merely affirms the right of the surviving husband, who has effected an insurance on his life payable to his wife " or her legal representatives," to dispose of the insurance *after her death.*

ORTON, J. We can perceive no material error in the findings of the circuit court in this case. We think the governing principle of the case, and which subordinates all other

questions, is, that the *Madison Relief Association*, the appel-
lant, had no corporate power or lawful right to make applica-
tion of moneys loaned to or paid for F. E. Dietrich, the insured,
by the company, in payment or diversion of any part of the
insurance moneys secured by his life policy from the company
to be paid upon his death to his wife, Mary Helen Dietrich,
and to his children, in case of her death, as the sole beneficia-
ries of the policy.   All of the securities and claims which are
here sought to be made a lien upon such moneys, and all
assignments or other agreements between the said F. E. Diet-
rich and the company for such purpose, are void, as being in
violation of the charter of the company, and in contravention
of the sole objects and benevolent purpose for which it was
organized.

The objects of this company, while yet a voluntary associa-
tion, are expressed in the preface to its constitution, adopted
in December, 1868, as follows:  "The design of this associa-
tion is to pay *to the heirs* of a member, thirty days after his
death, double so many dollars as there are members of the
association," etc.   Section 2 of the charter of the company,
ch. 315, P. & L. Laws of 1869, under which it has since acted
and done its business, provides as follows:   "The business of
said association shall be, to afford relief *to the widows and
children* of its *deceased* members, *and to such business it
shall be limited and restricted.*"

In the application for this policy, to the question, " In case
of your death, to whom shall the moneys be paid?," F. E.
Dietrich, the insured, answered:  "To my wife, Mary Helen
Dietrich, and, in case she be dead, to my children."   When,
afterwards, F. E. Dietrich became greatly embarrassed in his
financial circumstances, and indebted to the company for
money loaned, and was induced to assign the moneys of the
policy to the company to secure it, by agreement between him-
self and the company, this answer is changed upon the appli-
cation, so as to read, "*as per assignment attached, and balance,
if any,* to my wife Mary Helen Dietrich, and, in case she be
dead, to my children."

We must hold that the action of the company in these respects was without lawful authority and in violation of its charter, which "limits and restricts" its business to insurance of lives for the sole benefit of certain and special classes of beneficiaries.

"It is a well settled principle of corporations, that they have no other powers than such as are specifically granted, or such as are necessary for the purpose of carrying into effect the powers expressly granted." Angell & Ames on Corp., § 111.

This conduct is not only unwarranted by the charter, but subversive of the sole objects of this corporation. "A corporation cannot engage in a separate, distinct business, not authorized by its charter, not even as a means of raising funds to accomplish things authorized." Clark v. Farrington, 11 Wis., 307. Whether F. E. Dietrich could have lawfully diverted to any private purpose of his own, or pledged or assigned to other creditors than the company, the moneys of his life insurance so specifically and solely devoted by the contract and the law to the benefit of his widow and children, it is not necessary here to decide; but most clearly the company itself had no lawful authority to induce, or receive the benefit of, such a diversion or assignment.

Ryan, C. J.    I feel compelled to withhold my assent to the judgment in this case, on the ground on which it is put in the opinion of the court.

There is another grave question in the case, not free from difficulty; the right of the husband to control insurance effected by himself for the benefit of his wife and children. As the court has not considered that question, I shall not venture upon any discussion of it; but shall confine myself to a brief statement of the reasons why I cannot concur in the ground upon which the judgment is rested.

The charter of the corporation (section 4) authorizes it to make by-laws for the convenient transaction of its business. The charter also (section 6) authorizes the corporation to accumulate a fund by fees upon initiation of members and by dues

and assessments, as provided by its by-laws. And one of the by-laws provides for an initiation fee and a yearly due, in addition to the assessment accruing upon the death of each member, to pay his insurance. Such a fund was almost or quite essential to the business of the corporation, and the charter clearly authorizes such a fund to be indefinitely raised. Can it be the true construction of the charter that this fund should remain idle and unproductive in the hands of the corporation? I think not.

Of course, the citation in the opinion from Angell and Ames, that corporations take only such franchises as are granted to them, has long been a legal truism. But it is none the less true, as recognized in the passage quoted, that corporations also take incidental powers necessary to the execution of their express powers. This has also become a legal truism. And I take it that if a corporation, authorized to accumulate a fund, and not expressly authorized to use an actual surplus of it, should be held to be without power to use such surplus, the rule would tend to lock up idle capital, and would be against reason and public policy. Such a rule might prohibit a corporation from depositing its funds in a bank; certainly would prohibit it from depositing in bank at interest.

I think the true rule well stated in Brice's excellent work on *Ultra Vires*, 68: "A corporation may employ the corporate property, when it would otherwise be lying idle and profitless, for such purposes as are not alien to its primary business. Were it not for this principle, a corporation would be unable to utilize its waste lands, or to invest its unemployed capital, or even to place it at deposit account."

It is true that this corporation is organized for very beneficent purposes, as stated in its charter and by-laws, and dwelt upon in the opinion of the court. But making the best use of its surplus money, by loaning or investing it, is not only not alien to its primary object, but clearly goes in aid of it. The more profitable use it may make of its surplus funds, the better able it would be to meet its obligations to the widows and orphans or other beneficiaries of its deceased members.

The limitation in the charter, quoted in the opinion of the court, appears to me to have no bearing on the question. The limitation is surplusage in the charter, as the general rule of law applicable to all corporations would of itself work the limitation. Such a general limitation, whether under special words in the charter or by general rule of law, has no tendency to defeat the incidental powers of the corporation. And indeed the incidental power in question, of putting its funds to use, appears to be recognized in section 4 of the charter of this corporation.

Having power to make loans of its funds, the corporation has, of course, power to take securities for their payment. And, if the insurance of the husband for the benefit of his wife and children were subject to his control, the corporation could lend its money to him or for his benefit, and take security on the contract of insurance. Whether the husband had such control, appears to me to be the controlling question in the case.

*By the Court.* — The judgment of the circuit court is affirmed, with costs.