GUSTAVE A. WOLF, ADMINISTRATOR, ETC., v. THE DISTRICT GRAND LODGE No. 6, I. O. B. B.

*Mutual benefit associations—Conflicting provisions of charter— Beneficiaries—Estoppel—Statute of limitations.*

1. When the constitution of a mutual benefit association contains two inconsistent provisions, that most favorable to the insured will be adopted.

2. No person not of the class for whose benefit a mutual benefit association is authorized can be a beneficiary; citing *Benefit Association v. Rolfe*, 76 Mich. 146.

3. Where the statute under which a mutual benefit association is organized, and its articles of incorporation, entitle its members to devise the death benefit fund to any person, although not

·of any of the classes named as beneficiaries, a provision of the constitution of the association which attempts to restrict members in their choice of devisees cannot be sustained.

4. Where a member of a mutual benefit association fails to designate a beneficiary, and dies intestate, his heirs will take the death benefit, under the rule laid down in *Benefit Association v. Rolfe*, 76 Mich. 146.

5. Where a mutual benefit association, with full knowledge that a deceased member had misstated his age in his application for membership, bases its refusal to pay the death benefit *solely* upon the failure of the deceased to designate a beneficiary, the association is estopped, in a suit afterwards brought to recover said death benefit, from asserting such misstatement as to age as a defense; citing *Towle v. Insurance Co.*, 91 Mich. 219.

6. Plaintiff's intestate resided in Michigan at the time of his death, and was a member of a mutual benefit association. He left three heirs, one of whom was a resident of Germany, where she continued to reside until her death, which occurred some 10 years after that of the intestate. The remaining heirs were residents of Michigan and Ohio, respectively, and inherited the share of their co-heir in the death benefit; and subsequently assigned to plaintiff. And it is held that under How. Stat. § 8718,—which provides that if any person entitled to bring any of the actions mentioned in How. Stat. chap. 302, shall, at the time when the cause of action accrues, be absent from the United States and from the British Provinces of North America, such person may bring the action within the times in said chapter respectively limited after the disability shall be removed,—the statute of limitations did not begin to run until the death of said non-resident heir.

Error to Kent. (Grove, J.) Argued June 20, 1894. Decided September 25, 1894.

*Assumpsit.* Plaintiff brings error. Reversed, and judgment entered for plaintiff. The facts are stated in the opinion.

*Walker & Wolf,* for appellant.

*Maurice M. Houseman,* for defendant.

McGRATH, C. J. The Independent Order of B'nai

B'rith is a fraternal organization. Defendant is one of a number of subordinate organizations known as "district grand lodges," having authority to institute lodges, and exercising certain independent powers not in conflict with the laws promulgated by the parent organization. Each district grand lodge has jurisdiction over certain lodges in its district, and each district seems to have carried on, within itself, entirely independent of the parent organization and also of the other districts, a system of insurance on the assessment plan. Applications for membership in the order are made in writing to the local lodges, in which the applicant is required to state his age, residence, etc. Certain past officers of the local lodges become members of the district grand lodge of that district, with the right to sit and debate, but without the right to vote. Each lodge in the district elects a representative to its district grand lodge, and that body, so constituted, legislates for the district. In case of the death of a member of a lodge, that lodge reports such death to its district grand lodge, and the amount is assessed, upon a *per capita* basis, upon each lodge in the district in proportion to the endowment members in such lodge. The funds are forwarded to the district grand lodge, and paid by it. No certificates or policies are issued.

The defendant is incorporated under the statutes of Illinois relating to "corporations not for pecuniary profit." The act (Laws of 1874, p. 74) provides that—

"Associations and societies which are intended to benefit the widows, orphans, heirs, and devisees of deceased members thereof, and where no annual dues or premiums are required, and where the members shall receive no money as profit or otherwise, shall not be deemed insurance companies."

In *Rockhold v. Benevolent Soc.*, 129 Ill. 440, the Illinois court held that, while the language quoted from the act was "in form expository," yet the powers of the corpora-

tion were defined and determined thereby. The same court, in *Association v. Blue*, 120 Ill. 121, held, under a similar statute, that the language conferred the power on a member to name any stranger as a beneficiary.

The parent organization has a constitution, which is known as the "Constitution of the I. O. B. B." This constitution contains no reference whatever to the endowment feature. The articles of association of the defendant body were filed January 27, 1878, and are as follows:

"We, the undersigned, Charles Kozminski, Herman Felsenthal, Adolph Loeb, and Philip Stein, citizens of the United States, propose to form a corporation under an act of the general assembly of the state of Illinois entitled 'An act concerning corporations,' approved April 18, 1872, and that for the purpose of such organization we hereby state as follows, to wit:

"1. The name of such corporation is District Grand Lodge No. 6, I. O. B. B.

"2. The object for which it is formed is the practice of charity, and the promotion of humanity and enlightenment, in harmony with the constitution, laws, and tenets of the Independent Order of B'nai B'rith, the performance of all acts believed to accomplish these ends, and the securing to widows, orphans, heirs, and devisees of deceased members of said order in said district No. 6 an endowment in accordance with the laws of said grand lodge. Said corporation is not, and shall not be, for pecuniary profit.

"3. The management of the aforesaid district grand lodge shall be vested in 11 managers, who are to be elected annually.

"4. The following persons are hereby selected as the managers to control and manage said corporation for the first year of its corporate existence, viz.: Charles Kozminski, R. Reichman, D. M. Amberg, Philip Stein, B. H. Seligman, Adolph Loeb, E. Rubovits, S. Benjamin, David Adler, Samuel Glickauf, and John M. Levy.

"5. The location is in the city of Chicago, in the county of Cook, state of Illinois."

The defendant body has, however, what is termed a "Constitution," two sections of article 10 of which are as follows: Section 6 provides that—

"The widow of a member in good standing shall be endowed. If there be no widow, all his children shall be endowed. If there be no widow or such children, or parent or parents, then the endowment shall go to the reserve endowment fund, unless such member shall have formally designated a beneficiary or beneficiaries in a book to be kept for that purpose by the lodge, recording therein in his own handwriting, or causing the same to be done at his request, before two witnesses, the name of such beneficiary; but the testamentary disposition of the endowment, brought to the notice of the trustees, shall be respected and carried out by them, provided that such testamentary disposition be confined to the children, parents, brothers, or sisters of the deceased brother in good standing, or to the reserve endowment fund."

Section 9 provides that—

"Any applicant for membership above the age of 45 years, if elected a member, shall be excluded from the benefit of the endowment law, and be under no obligation to comply with its requirements: *Provided,* that this section shall not apply to applicants for membership by card."

A lodge of this order was instituted at Grand Rapids, June 6, 1875. The by-laws of the lodge contain no reference to a will book, nor to the age of applicants, except that candidates for membership must be 21 years of age, nor do they intimate who may or who may not be beneficiaries. Section 1 of article 9 provides that—

"The fees for candidates for membership shall be sixteen dollars, of which five dollars shall be paid on application, ten dollars for degrees, and *one dollar to be sent to D. G. L. for endowment fund.*"

While, under the constitution of the parent organization and that of the district grand lodge, two classes of members were possible, viz.: (1) Members having received degrees, and entitled to all rights and benefits except participation in the endowment fund; and (2) members entitled to all the rights and benefits of the first class, and also the right of participation in the endowment fund,—yet the

by-laws of the Grand Rapids lodge contemplated but one
class, and that the latter.

Solomon Wolf, plaintiff's intestate, who resided at Sauga-
tuck, made a written application to said lodge for member-
ship July 11, 1875, was elected, received the degrees, and
continued to be a member, paying dues and assessments as
a benefit member, until his death, in July, 1880. He was
never married, and died intestate, leaving no father or
mother surviving him. He left a sister who at the time
of his death resided in Germany, where she continued to
reside until her death, in 1890; a brother, Jacob Wolf, who
resided in Grand Rapids; and a sister who resided in Ohio.
Plaintiff, a nephew, as administrator and as assignee, brings
this suit to recover the death benefit. The defendant
insists:

1. That the 10-years statute of limitations, which was
pleaded, had run.
2. That decedent was 51 years of age when he became
a member, and was therefore ineligible.
3. That decedent had made no designation in the will
book, as provided in the constitution, and left no will.

As to the first point, one of the parties entitled to the
fund resided in Germany when the cause of action accrued,
and continued to reside there until she died, in 1890.
Under How. Stat. § 8718, the statute did not begin to run
until her death. At her death, her interest, under our
statute of distributions, would go to her brother and sister,
whom plaintiff represents.

Upon the second point, it is conceded that plaintiff's
intestate was 51 years of age when he became a member.
It appears that decedent and his brother, Jacob Wolf,
were solicited to become charter members of the lodge.
Jacob became a charter member, but Solomon made written
application for membership a month later. His applica-
tion was referred to a committee, who reported favorably,

and he was admitted. This application was not produced, or its absence accounted for. In its absence, it must be presumed that, in conformity with the requirements of the by-laws, it contained a statement of the age of the applicant, and that the age was therein correctly given. When decedent appeared for initiation on August 8, 1875, he was required to sign, and did sign, a "declaration," the material portion of which is as follows:

"On this 8th day of August, 1875, appeared Mr. Solomon Wolf for initiation in our Grand Rapids Lodge No. 238, I. O. B. B., and, having been instructed to make true answers to the questions which he would be asked, made the following declaration: My name is Solomon Wolf. I am 44 years old. I reside at Saugatuck. I am by occupation a merchant. I am not married. I am in good health. Am not aware of having any sickness or bodily infirmity. I have read the constitution of the I. O. B. B., and the by-laws of Grand Rapids Lodge No. 238, and am willing to obligate myself to observe the constitution, laws, and rules of the order faithfully."

The body of this declaration is written in English, and is in the handwriting of the secretary, and the testimony tends to show that decedent could neither read nor write the English language. The material out of which this lodge was constructed was collected by officers of the defendant body. It is conceded that such officers, so collecting the material for the lodge, held out to the persons applied to by them that the organization was a benefit organization, providing for $1,000 at the death of its members, and that age was no bar to admission in the organization of lodges; that both decedent and his brother were urged to join as charter members; that the requisite number for the formation of a lodge was 20; that but 17 had been secured when the lodge was instituted; that decedent was not named in the charter; that decedent's brother became a charter member; that he was 49 years of age at the time; that Jacob was told that his age was not a bar;

and that he gave his correct age at the time, but in the declaration which he signed his age was given at 44 years. The testimony tends to show that, at the institution of the lodge, the charter members were informed for the first time that the constitution excluded from participation in the endowment fund all above the age of 45 years, but that in the formation of lodges they did not observe this limitation; that the committee to whom decedent's application was referred called upon Jacob Wolf to make inquiry concerning the applicant, and Jacob informed the committee that Solomon was over age; that both Jacob and Solomon were well known, not only to the charter members of the lodge, but to the officers who instituted the lodge; and that the fact that decedent was upwards of 45 years of age was known to the charter members generally.

After the death of Solomon Wolf, the lodge at first ordered the assessment. They afterwards countermanded the order, and again directed the assessment to proceed; and the assessment was accordingly made and collected. The officers of the defendant body, before payment, made inquiry as to why the order for the assessment had been countermanded, and the reasons given were that the decedent had made no will or will-book designation, and a question had arisen as to the age of the applicant at the time of his admission. At the next session of the district grand lodge an investigation was instituted, and at the following session certain preambles and resolutions were adopted, reciting and resolving that—

"*Whereas*, it appears that on various occasions the officer instituting lodges has represented to certain applicants for membership (charter members) that their age was no bar to the benefits of the endowment law of this district, and that they were entitled to the rights and privileges thereof by virtue of their being charter members; and

"*Whereas*, under such representations, a number of

applicants who were above the age of 45 were so initiated and admitted as members; and

"*Whereas,* many of the members so admitted paid, and continue now to pay, the assessments levied under the endowment law; and

"*Whereas,* we believe that under these representations the members so initiated and paying have a full and just claim to the benefits of said endowment law:

"Therefore, be it resolved that Jacob Wolf, of Grand Rapids Lodge No. 238 [and 23 other members of lodges in the district], be, and are hereby, entitled to all rights, privileges, and benefits of article 10 of the constitution, known as the 'Endowment Law,' they having been above the age of 45 when initiated to the contrary notwithstanding; * * * and the grand secretary shall enroll their names upon his record of members entitled to the benefits of article 10 of the constitution of District Grand Lodge No. 6."

Prior to this action, the grand lodge had sent out a circular letter to each of the lodges in the district, asking what charter members had been admitted who were over the age of 45 years, and the circumstances under which admitted. Grand Rapids lodge reported as follows:

"The only case in our lodge coming within the terms of the letter is that of Brother J. Wolf. On investigation, we find the facts and circumstances surrounding the same to be as follows:

"Brother Wolf joined our lodge as a charter member, and did so join at the special instance and request of the grand lodge installing officers; that one of the inducements to join our lodge held out to Brother Wolf by the installing officers was the endowment benefit, which they assured him all charter members were entitled to; that, at the time of making his declaration, Brother Wolf truly and correctly stated his age to the two installing officers, but they stated it in his declaration to be 44 years; that Brother Wolf probably knew of their so stating it at the time, but it was so inserted by their directions; that Brother Wolf acted in entire good faith, sought to conceal nothing, and made no attempt to defraud the lodge or order; that Brother Wolf was at the time ignorant of the terms of our endowment law; that he had always been treated as an endowment member, and has always been in

good standing, and now insists that he should be acknowledged as an endowment member, and entitled to the endowment benefit."

At the same session of the district grand lodge at which this action was taken, that body declined to pay the death claim in the present case. The committee reported upon both matters as follows:

"In regard to the overaged charter members referred to in the president's message and the secretary's report, your committee, in consideration of the established fact that those members have joined the lodges under the representations of the installing grand lodge officers that they would be entitled to the benefits of the endowment, recommend that they should be entitled to all the rights, privileges, and benefits of article 10 of the constitution, known as the 'Endowment Law.'

"In the matter of the deceased Brother Solomon Wolf, of Grand Rapids Lodge No. 238, after whose death assessment was levied on the lodges, and which money is at present in the hands of the district grand lodge, *because there are no legal heirs to the same,* your committee recommends that it should be used as payment of the next assessment."

A substitute for the first paragraph of the report was adopted, and the recommendation contained in the second paragraph was concurred in by the district grand lodge.

While it is true that the question of decedent's age was discussed at length, yet the defendant body, after a full knowledge of all the facts, put the refusal to pay not upon that ground, but upon the ground that no beneficiary had been designated by plaintiff's intestate. Defendant is estopped from asserting any other defense after suit brought. *Towle v. Insurance Co.,* 91 Mich. 219.

Upon the third point raised, it appears by the journal of the proceedings of the defendant body that in 1875, at the time of the adoption of the constitution, and while it was under consideration, a motion was made to substi-

tute for section 2 of article 10, as reported by the committee on legislation, the following:

"The trustees shall pay to the widow, or, in absence thereof, to the legal representatives, of a deceased brother in good standing, the sum of $1,000. They shall assess this sum '*pro rata*' among all the members of the district who are amenable to the endowment act, as reported to the G. S. previously. Such *pro rata* assessment shall not be made in fractions of less than five cents, any excess over $1,000 to be paid into the reserve fund."

The motion prevailed, and the constitution, including said substitute, was adopted. The constitution, as afterwards printed in the proceedings by the secretary, does not contain the substitute. As the case was taken from the jury at the close of plaintiff's proofs, no explanation is made of the situation. If this substitute section is to be treated as a part of the constitution, there is an irreconcilable conflict between it and section 6 of the same article, as above given. The well-established rule is that, when the charter or by-laws of a mutual benefit society contain two inconsistent provisions, that most favorable to the insured will be adopted. Nibl. Mut. Ben. Soc. §§ 15, 172; *Insurance Co. v. Hazelett*, 105 Ind. 212; *Supreme Lodge v. Abbott*, 82 Id. 1; *First Nat. Bank v. Insurance Co.*, 95 U. S. 673; *Burkhard v. Insurance Co.*, 102 Penn. St. 262.

We do not think, however, that the provisions of section 6 of article 10 of the constitution can be sustained. In the first place, the section undertakes to restrict the member in his choice of a devisee. The statute under which defendant is organized, and its articles of incorporation, under the Illinois cases hereinbefore referred to, clearly entitle the member to devise the fund to any person, although not of any of the classes named. See, also, *Raub v. Association*, 3 Mackey, 68. In the next place, no

102 MICH.—3.

designation in the will book is necessary if the member leaves a widow or children, or parent or parents. In *Supreme Lodge v. Nairn,* 60 Mich. 44, a certificate or policy was issued, in which the beneficiary was expressly named, and the constitution provided how a change in that contract should be effected. Suppose, however, that in such a case the beneficiary had died before the insured, and the latter had neglected to make a new designation, would it be contended that the policy had lapsed, and that the heirs would not take? *Mich. Mut. Ben. Ass'n v. Rolfe,* 76 Mich. 146. In that case it was held that, there being no beneficiary named in the certificate *qualified to take,* and as the deceased had no family, the fund was payable to his heirs. In the present case it is not claimed that the endowment contract lapsed, but the constitution undertakes to name a beneficiary not a member of any class named in the statute or articles of association. In no sense can the association itself or the reserve fund be said to be a devisee. The relations between the insured and defendant respecting the endowment fund were purely contractual. The position of the defendant is that the heirs, although clearly within the terms of the statute, cannot take in the absence of a devise; but that it, although not within the contemplation of the statute, may take, by virtue of the contract and in the absence of a devise. This contention cannot be sustained. A devise is essential to support the claim of the society to the fund. It is well settled that no person not of the class for whose benefit the association is authorized can be a beneficiary. *Mich. Mut. Ben. Ass'n v. Rolfe, supra.* In *Dietrich v. Association,* 45 Wis. 79, an assignment of the insurance to the society, to secure an indebtedness to it, was held void. The court say:

"The action of the company in these respects was with-

out lawful authority, and in violation of its charter, which 'limits and restricts' its business to insurance of lives for the sole benefit of certain special classes of beneficiaries."

In the absence of a devise or designation, the heirs take, under the rule laid down in the Rolfe case.

The court erred in directing a verdict for defendant. Under the case as made, a verdict should have been directed for plaintiff. The judgment will therefore be reversed, and judgment entered here for plaintiff, with costs of both courts.

LONG, GRANT, and HOOKER, JJ., concurred. MONTGOMERY, J., did not sit.