MATHEWSON *v.* SUPREME COUNCIL ROYAL ARCANUM.

1. INSURANCE — MUTUAL BENEFIT SOCIETIES — BENEFICIARIES — CHANGE—AMENDMENT OF STATUTE—EFFECT.

Where, after the issuance of a benefit certificate, the statute under which a mutual benefit society is organized is amended with respect to the classes of persons who may be designated as beneficiaries, the statute not expressly requiring acceptance by societies already organized, the designation by a member of a beneficiary from an added class is one to which the society has a right to assent, and does assent by issuing a certificate to the member payable to such beneficiary, with knowledge that the beneficiary is one of the added class, notwithstanding the society does not expressly avail itself of the statutory amendment by change of its by-laws. Per MOORE, GRANT, and MONTGOMERY, JJ.

2. SAME—BENEFICIARIES—WHO ENTITLED—NEXT OF KIN.

Where the by-laws of a mutual benefit society provide several grades of persons, any one or more of whom may be beneficiaries, and the twelfth grade is the "member's next of kin who would be distributees of the personal estate of such member upon his death intestate," grandnephews and grandnieces may be designated as beneficiaries under such grade, though there are persons living belonging to the preceding grades, and who would take his estate to the exclusion of the beneficiaries should he die intestate. Per BLAIR and MCALVAY, JJ.

Appeal from Kent; Wolcott, J. Submitted February 14, 1906. (Docket No. 154.) Decided December 21, 1906.

Bill by Rebecca M. Mathewson against the Supreme Council of the Royal Arcanum to enforce the payment of a benefit certificate. The defendant filed an answer in the nature of a cross-bill to establish the title of said certificate in others. From a decree dismissing the bill, complainant appeals. Affirmed.

*Ganson Taggart* and *S. W. Barker*, for complainant.

*D. D. Aitken* (*De Vere Hall* and *John Haskell Butler*, of counsel), for defendant.

MOORE, J. From a decree dismissing the bill of complaint the case is brought here by appeal. The questions involved are law questions. There is no substantial difference between counsel as to the facts.

Defendant is a mutual benefit association organized November 5, 1877, under the laws of Massachusetts, which laws then provided that associations—

" May, for the purpose of assisting the widows, orphans or other dependents of deceased members, provide in their by-laws for the payment by each member of a fixed sum, to be held by such association until the death of a member occurs, then to be forthwith paid to the person or persons entitled thereto. * * * Associations may be formed under said act [chap. 375, Acts 1874] for the purpose of rendering assistance to the persons and in the manner above specified." Acts 1877, chap. 204, § 1.

Articles of incorporation were signed July 14, 1877, and are as follows:

" We whose names are hereto subscribed do by this agreement associate ourselves with the intention to constitute a corporation according to the provisions of the three hundred and seventy-fifth chapter of the acts of the general court of the Commonwealth of Massachusetts passed in the year eighteen hundred and seventy-four. Approved June 27th in said year. The name by which the corporation shall be known is the Supreme Council of the Royal Arcanum. The purpose for which the corporation is constituted is to unite fraternally all men of sound bodily health and good moral character who are socially acceptable and between 21 and 60 years of age.

" To give all moral and material aid in its power to its members and those dependent upon them. To educate its members socially, morally and intellectually. Also to assist the widows and orphans of deceased members. To establish a fund for the relief of sick and distressed members. To establish a widows' and orphans' benefit fund from which on the satisfactory evidence of the death of a

member of the order who has complied with all the lawful requirements, a sum not exceeding three thousand dollars shall be paid to his family, or those dependent on him as he may direct. The city within which the corporation is established or located is the city of Boston within said Commonwealth. The amount of its capital stock is nothing. The par value of its shares is nothing. The number of its shares is nothing.

"In witness whereof we have hereunto set our hands this 14th day of July, in the year eighteen hundred and seventy-seven."

A certificate of incorporation was issued in the following November, reciting that the parties named had associated themselves with the intention of forming a corporation for the purpose of fraternal union, aid to its members and their dependents, assisting the widows and orphans of deceased members and establishing a fund for the relief of sick and distressed members and a widows' and orphans' benefit fund, etc.

In 1882 the general statute applying to such corporations was amended so as to read:

"A corporation organized for any purpose mentioned in section two, may, for the purpose of assisting the widows, orphans or other relatives of deceased members, or any person dependent upon deceased members, provide in its by-laws for the payment by each member of a fixed sum, to be held by such association until the death of a member occurs, and then to be forthwith paid to the person or persons entitled thereto." Acts 1882, chap. 195, § 2.

The statute was again amended in 1888 (chap. 429), providing, in section 8, that benefits could be made payable to the husband, wife, children or relatives of or persons dependent upon such member; section 12 requiring every corporation to file annual statements, and section 17 providing that corporations existing may reincorporate; "provided that nothing in this act contained shall be construed as requiring or making it obligatory upon any such corporation to reincorporate, and any such corporation

may continue to exercise all rights, powers and privileges conferred by this act or its articles of incorporation not inconsistent herewith."

The defendant association filed a certified copy of its amended by-laws to take effect August 1, 1888, in the office of the insurance commissioner of Massachusetts, the details of which it is not necessary to recite. On the 16th day of February, 1892, said association filed with the insurance commissioner of Massachusetts copies of its laws, as further amended, as follows, section 324:

"A benefit may be made payable to any one or more persons of any of the following classes only:

"Class First.

"Grade 1st. Member's wife.
" 2nd. Member's children, and children of deceased children.
" 3rd. Member's grandchildren.
" 4th. Member's parents.
" 5th. Member's brothers and sisters of the whole blood.
" 6th. Member's brothers and sisters of the half blood.
" 7th. Member's grandparents.
" 8th. Member's nieces and nephews.
" 9th. Member's cousins in the first degree.
" 10th. Member's aunts.
" 11th. Member's uncles.
" 12th. Member's next of kin who would be distributees of the personal estate of such member upon his death intestate.
" In either of which cases no proof of dependency of the beneficiary designated shall be required.

"Class Second.

"To an affianced wife, or to any person who is dependent upon the member for maintenance (food, clothing, lodging or education); in either of which cases written evidence of the affianced relation or dependency, within the requirements of the laws of the order, must be furnished to the satisfaction of the supreme secretary before the benefit certificate can be issued."

The by-laws in force on October 17, 1896, and at the

time of the death of Isaac B. Mathewson, May 20, 1902, so far as they are material to this claim, are the same as those filed with the insurance commissioner February, 1892, hereinbefore set out. 'The constitution of the order also provides, under section 3, tit. 1, chap. 2, the objects of the order:

"5th. To establish a widows' and orphans' benefit fund, from which, on the satisfactory evidence of the death of a member of the order, who has complied with all its lawful requirements, a sum not exceeding $3,000 shall be paid to the wife, children, relatives of or persons dependent on such member, as limited and described in the laws of said order relating to benefit certificate, as he may direct, in accordance with such laws."

Under article 5, chap. 1, § 114:

"The constitution of the supreme council and the laws governing grand councils, the widows' and orphans' benefit fund, benefit certificates and medical examinations may be altered or amended by a three-fourths vote of the entire membership of the supreme council at an annual meeting, or at a special meeting called for the purpose."

Section 329, chap. 3, tit. 2:

"No benefit shall be payable to a person or persons of class second, mentioned in section No. 324, unless the dependency therein required to be shown exists at the time of the member's death; in which case proof of such dependency at the member's death shall be furnished in writing to the satisfaction of the supreme regent. * * *

"SEC. 330. If at the time of the death of a member, who has designated as beneficiary a person of class second, the dependency required by the laws of the order shall have ceased or shall be found not to have existed, or if the designated beneficiary is his wife and they shall be divorced upon the application of either party, or if any designation shall fail for illegality or otherwise, then the benefit shall be payable to the person or persons mentioned in class first, section No. 324, if living, in the shares and order of precedence by grades as therein enumerated, the persons living of each precedent grade taking in equal shares per capita to the exclusion of all persons living of subsequently enumerated grades."

Title 6, chap. 4, § 447:

"No action at law or in equity in any court shall be brought or maintained on any cause or claim arising out of any membership or benefit certificate, unless such action is brought within three years from the time when such right of action accrues."

On November 13, 1885, Isaac B. Mathewson made out application for certificate of membership, and the following certificate was issued:

"Royal Arcanum Benefit Certificate.

[Supreme Council            [Subordinate Council
      Seal.]                            Seal.]

"This certificate is issued to Isaac B. Mathewson a member of Bryant Council No. 182, Royal Arcanum, located at Grand Rapids, Mich., upon evidence received from said council that he is a contributor to the widows' and orphans' benefit fund of this order; and upon condition that the statements made by him in his application for membership in said council, and the statements certified by him to the medical examiner, both of which are filed in the supreme secretary's office, be made a part of this contract, and upon condition that the said member complies in the future with the laws, rules and regulations now governing the said council and fund, or that may hereafter be enacted by the supreme council to govern said council and fund.   *   *   *

"These conditions being complied with, the supreme council of the Royal Arcanum hereby promises, and binds itself to pay out of its widows' and orphans' benefit fund to Rebecca M. Mathewson, wife, a sum not exceeding three thousand dollars, in accordance with and under the provisions of the laws governing said fund, upon satisfactory evidence of the death of said member, and upon the surrender of this certificate, provided that said member is in good standing in this order, at the time of his death, and provided also that this certificate shall not have been surrendered and another issued at his request, in accordance with the laws of this order.

"Dated December 17, 1885."

The laws of the order also had this provision:

"A certificate may be made payable to a bank or other corporation in trust for the beneficiaries; or to a person

who may receive the proceeds for the benefit of the beneficiary or beneficiaries within the classes designated by the laws of the order. The name and relationship of the beneficiary must be specified in all such cases."

On the 13th day of October, 1896, Mr. Mathewson surrendered this certificate and made application for a new one to be payable to the Smithfield Savings Bank of Greenville, Rhode Island, in trust for Gladys Ardell Walsh, daughter, and Frederick Earl Walsh, son, of his sister's daughter. A certificate was thereafter, and on the 17th day of October, 1896, issued in accordance with such request, such second certificate being in the identical form as the first one issued, except as to the beneficiaries, date, etc. Isaac B. Mathewson died May 20, 1902.

August 30, 1902, the defendant sent a draft for $3,000 to N. S. Winsor, cashier of the National Exchange Bank, to pay the death loss, with instructions, among other things, to secure a surrender of the certificate properly receipted. Complainant was at this bank after the draft arrived there, and made inquiries about it, and, it is claimed, promised to forward the certificate on her return home, and that, relying upon her statement, such fund was duly paid to the trustee by defendant without any notice of any claim of complainant.

It is the claim of complainant that, at the time she was at the bank and made the inquiries, she did not know what her legal rights were. Later, some correspondence was had which did not result in an agreement, and this bill was filed, complainant asking a decree in her favor for the entire fund. Counsel for complainant say the questions involved are:

" (1) The authority of the defendant association to enact the laws providing who may be made beneficiaries.

" (2) Whether such laws are binding on the members and on the association, and whether they can be arbitrarily waived by the officers.

" (3) Whether the grandniece and grandnephew (named as beneficiaries in the second certificate) come within the terms of such laws:

" (a) Under the designation in grade 8 as 'member's nephews and nieces.'

" (b) Under grade 12 'a member's next of kin who would be distributees of the personal estate of such member upon his death intestate.'

" (4) Whether complainant is estopped from asserting her claim."

Great stress is laid upon the fact that, after the statute was amended so as to include the term "or other relatives of deceased members," defendant did not avail itself of the right to provide for the naming of "other relatives of deceased members" but did provide by by-law for two classes of beneficiaries as already shown. It is insisted that, as neither of these classes included the term "other relatives" it precludes the idea of any beneficiary being named who does not come within one of the classes named in the by-laws, counsel citing *Burbank* v. *Relief Ass'n*, 144 Mass. 434; *Norwegian Old People's Home Society* v. *Wilson*, 176 Ill. 94; *Grimme* v. *Grimme*, 198 Ill. 265; *Supreme Lodge Order of Mutual Protection* v. *Dewey*, 142 Mich. 666, and other cases to be found in the brief of counsel. We think an examination of these cases will show them distinguishable from the case at bar.

On the part of the defendant it is insisted:

1. That as grade 8 provides that nieces and nephews may be beneficiaries, this includes grandnieces and grandnephews.

2. That the beneficiaries named would come under the following provision in the twelfth grade:

"Member's next of kin who would be distributees of the personal estate of such member upon his death intestate."

It is argued:

" Mr. Mathewson was not precluded from selecting a beneficiary of any grade, from the second to the twelfth, inclusive, because there existed a person of the first grade, as he was permitted to select any one or more persons of any of the twelve grades. So, he could have selected his uncles of the eleventh grade, if any there were, to the ex-

.clusion of all persons of grade first to tenth, inclusive. The selection of any one or more persons of a given grade presupposed the exclusion from choice or the rejection of all persons of precedent grades; therefore, when he selected from the twelfth grade, he intended to exclude and did exclude and reject all persons of the precedent eleven grades. The test to be applied in sustaining or overturning his choice is: Assuming, if necessary, to support the nomination, the death of his wife, his children, his children's children, his parents, his brothers and sisters of the whole and of the half blood, his grandparents, his nieces and nephews, his cousins in his first degree, his aunts and uncles, were Gladys Ardell Walsh, his grandniece, and Frederick Earl Walsh, his grandnephew, his relatives who would have been the distributees of his personal estate upon his death intestate, on the 17th day of October, 1896? Any person that was then within the statutes of distribution was a permissible beneficiary. That the designation was of the class permitted, there can be no doubt. 3 Comp. Laws, § 9322, subd. 6; 17 Am. & Eng. Enc. Law (2d Ed.), p. 543."

3. We quote from the brief:

"If the designation was not permissible under any by-law of defendant, it was lawful under the amendment of 1882 of the statutes of Massachusetts. This amendment permitted associations incorporated under chapter 115 to pay benefits to the relatives of its members. * * *

"If it be conceded that the by-laws of defendant did not permit a grandniece and a grandnephew to be named as beneficiaries, the amendment to the statute did, and defendant could waive the provisions of its by-laws and permit any designation authorized by the act under which it was incorporated, as so amended. The defendant and other associations incorporated under said act have established this doctrine in the courts of Massachusetts and other States. Some of the text authorities and decisions are as follows: Niblack on Accident Insurance and Benefit Societies (2d Ed.), §§ 162, 230; 1 Bacon on Benefit Societies and Life Insurance (3d Ed.), §§ 46, 244; *Massachusetts Catholic Order of Foresters* v. *Callahan*, 146 Mass. 393; *Supreme Council American Legion of Honor* v. *Smith*, 45 N. J. Eq. 466; *Marsh* v. *Supreme Council American Legion of Honor*, 149 Mass. 512; *Wallace* v. *Madden*, 168 Ill. 356; *Tepper* v. *Supreme*

*Council Royal Arcanum,* 61 N. J. Eq. 638; *Wolf* v. *District Grand Lodge I. O. B. B.,* 102 Mich. 23."

4. The designation was valid under Act No. 119 of the Public Acts of Michigan for 1893.

5. The complainant was bound to speak when she knew the money was in the bank, and she is now estopped.

Counsel cite authorities under each of the heads we have mentioned. If they are right in their contention under head three, it will be unnecessary to discuss the other questions argued.

It appears from what we have already quoted that the amendment of 1882 permitted certain persons to be designated as beneficiaries, and in addition thereto "other relatives of deceased members." It will not be questioned that a grandniece and a grandnephew are relatives. While this amendment to the statute was in force, Mr. Mathewson surrendered the certificate in which complainant was named as beneficiary, and asked that a new certificate might be issued "payable to the Smithfield Savings Bank of Greenville, Rhode Island, in trust for Gladys Ardell Walsh, daughter, and Frederick Earl Walsh, son, of my sister's daughter." It will be observed that this application was not ambiguous. It advised the defendant fully that it was desired the new insurance should be for the benefit of a grandniece and a grandnephew. Understanding the effect of this application, the defendant on the 17th day of October, 1896, issued in accordance with the request of Mr. Mathewson a new certificate upon which Mr. Mathewson made payments until his death, a period of nearly six years.

In Niblack on Accident Insurance and Benefit Societies (2d Ed.), § 162, it is said:

"Where the law (statute) relating to the classes of beneficiaries who may take the fund of a society has been changed after the organization of the society, so as to include other beneficiaries than those first enumerated, the designation by a member of a beneficiary from an added class of beneficiaries is a designation to which the

society has a right to assent, and does assent by issuing a certificate to the member payable to ˙such beneficiary, with knowledge that the beneficiary is one of the added class. A mutual benefit society was incorporated under a law providing for the accumulation of a fund 'for the purpose of assisting the widows, orphans, or other persons dependent upon deceased members.' Afterward the law was so amended as to read 'for the purpose of assisting the widows, orphans, or other relatives of the deceased, or any person dependent on deceased members.' The society did not adopt the statute amending the act under which it was incorporated. A person who became a member after the amendment of the law designated, as his beneficiary, his mother, who was not then, or at any time afterward, dependent upon him for support. Subsequently the member married, and died in good standing in the society, leaving his widow and his mother surviving him. It was held, under these facts, that the amending statute needed no formal adoption by the society, that the designation of his mother was such as he could legally make at that time, as the law which permitted a relation, merely, not being necessarily a dependent, to be designated, was in force when he made his designation, and that his mother was entitled to receive the fund."

Again:

" Where the organic law of a society, the statute under which it is incorporated, is amended by an act which does not require formal adoption by existing societies, and the powers of societies are thereby enlarged by adding to the persons who may become beneficiaries, a member may, with the consent of the society, make a new designation which can only be lawfully made by virtue· of the later statute. In such a case it cannot be said that the society was exercising, and was only authorized to exercise, the more limited powers which it had under the earlier statute." Niblack on Accident Insurance and Benefit Societies (2d Ed.), § 230.

1 Bacon on Benefit Societies and Life Insurance (3d Ed.), § 46, reads:

" A statute enlarging the powers of a beneficiary association takes effect without formal adoption by the association, and when, after such legislation, an application for membership is accepted, it cannot be said, in the

absence of any express determination on the part of the association, that it was exercising the more limited powers under the earlier statute.".

Again:

"It has been held that the association is not obliged to formally accept the provisions of an enlarging statute which applies to certificates issued before the act was enacted." 1 Bacon on Benefit Societies and Life Insurance (3d Ed.), § 244 a.

In *Massachusetts Catholic Order of Foresters* v. *Callahan*, 146 Mass. 392, among other things, it is said:

"Under the statutes of Massachusetts as they existed in 1879, when the corporation was originally formed, the only right which the association had to provide for or to accumulate a fund for the purpose of paying a sum upon the decease of its members was 'for the purpose of assisting the widows, orphans, or other persons dependent upon deceased members.' Pub. Stat. chap. 115, § 8. This section was amended by Acts of 1882, chap. 195, § 2, which provided that the fund thus authorized should be, 'for the purpose of assisting the widows, orphans or other relatives of deceased members, or any person dependent upon deceased members.' The association republished its constitution and by-laws in 1882, subsequent to the passage of the statute of 1882, with certain alterations made subsequent thereto, although the existence of that statute is not alluded to or noted. These changes had no reference to, nor were they occasioned by reason of, the larger powers with which the corporation was invested. They related to matters of detail only. It was under this constitution of 1882 that the association was conducting its business when John J. Callahan became a member, in 1883.

"It is the contention of Mrs. Keefe [the administratrix of John's wife], that although Catherine Callahan, as the relative of her son, might have been designated under the statute of 1882 as a beneficiary, yet this statute had never been adopted by the association. The statute required no formal adoption. It enlarged the powers of this and other similar beneficiary associations. When, after the passage of the statute of 1882, the association accepted the application of John J. Callahan, and the designation which he might then lawfully make, it could not be said

by it, or by any claimant, that it was exercising, and was only authorized to exercise, the more limited powers which it had under the earlier statute.

"It is also contended, that by its constitution the association had so limited itself that it could not accept a designation of the mother. We have no occasion to consider whether a beneficiary association might not by its constitution so limit itself in its operations that its endowments should be only for the benefit of one or more classes of those whom it might lawfully entitle thereto, as for the widows only, or orphans only, of deceased members. We find no such intention manifested by this association. The argument on behalf of Mrs. Keefe is, that the constitution of 1882, under the title 'object' has the effect to limit the benefits of the association to two classes of persons only, widows and orphans. The 'name and object' of the association are stated in a preamble to the constitution. It is declared that the object of the organization is to promote friendship, unity and true Christian charity. It defines each, unity being defined as 'unity in uniting together for mutual support, and in making suitable provision for the widow and the orphan.' It would be a very forced construction to infer from this generality, that the association had thus excluded itself from making provision for those who were dependent on the deceased which it legally might make when the constitution was originally formed, or for his relatives which it might lawfully make when Callahan became a member. The constitution of 1879, which was the one originally made, and that of 1884, which was in force when Callahan died, are each prefaced by the same recital of 'name and object' yet each constitution declares, in defining the duties and powers of the subordinate court, that the principal object of the association is to secure 'to the dependents of its members' the sum of $1,000, payable on the death of such member. It is thus manifest, that under these two constitutions it could not have been intended to limit the benefits of this association to the widow and orphan, merely because they alone are mentioned in the declaration of its 'name and object.' In the constitution of 1882, in defining the powers of the subordinate courts, the phrase above quoted as to securing 'to the dependents of its members' $1,000, is not used. Under that constitution to hold that, because it had adopted as its preface a statement that among its purposes was a suitable provision for the widow and

orphan, it could not provide for others, as 'relatives' or 'dependents,' for whom the statute permits such association to provide, would not be a reasonable construction.

"The deceased member had a right to designate as the beneficiary of the fund any person coming within the statutory provisions which enumerate those who may be thus designated. The law which permitted a relative merely, not being necessarily a dependent, to be designated, was in force when he made his designation. The designation of his mother by the deceased was therefore one to which the association had a right to assent, as it did assent, by accepting the order of the deceased. *Briggs* v. *Earl,* 139 Mass. 473; *Supreme Council American Legion of Honor* v. *Perry,* 140 Mass. 580; *Elsey* v. *Relief Ass'n,* 142 Mass. 226. This was not revoked by the subsequent marriage of John J.; and his mother, Catherine Callahan, is now entitled to receive the fund of $1,000."

See, also, the cases cited in the quotation made from brief of counsel for defendant.

We think, then, after the amendment of 1882 the statute authorized a member to designate as a beneficiary a relative, and that Mr. Mathewson having surrendered one certificate and reqested another to issue in its place to his grandniece and grandnephew, and the defendant having acted upon said request by issuing said certificate, naming them as beneficiaries, it must be deemed to have assented thereto. Having reached this conclusion, it is unnecessary to discuss the other questions.

The decree is affirmed, with costs.

GRANT and MONTGOMERY, JJ., concurred with MOORE, J.

BLAIR, J. I concur in the affirmance of the decree on the ground upon which, as I understand, the circuit judge based it, viz.: that the grandniece and grandnephew were proper and lawful beneficiaries under the twelfth grade of section 324 of defendant's laws.

I agree with the interpretation of complainant's counsel that the words "next of kin," as used in this section,

mean those who would be next of kin on the failure of the eleven preceding classes. This simply defines, however, what persons shall constitute the twelfth grade, limiting them to those who would be next of kin, etc., in case of the death of all of the persons included in the eleven preceding grades. It was not the intention of this law, in my opinion, to prohibit the selection of beneficiaries from this grade in cases where there were existing members of a preceding grade. Such a construction would necessarily involve the conclusion that a married member could only select his wife. The section provides that: "A benefit may be made payable to any one or more persons of any of the following classes only; " and I think that it was the plainly expressed intention of this statute to authorize a member to select his beneficiaries from any one of the enumerated grades, regardless of the existence of members of preceding grades. Any other interpretation, in my opinion, would do violence to the letter and spirit of the law.

McALVAY, J., concurred with BLAIR, J.