Kennan vs. Rundle and others.

KENNAN, Receiver, Respondent, vs. RUNDLE and others, Appellants.

*January 13 — February 2, 1892.*

*Mutual insurance company: Guaranty fund:* Ultra vires.

A mutual insurance company organized under secs. 1941a–1941g, S. & B. Ann. Stats., has no power to take a bond by which certain of its policy-holders guarantee, each to a certain amount, the existing and future indebtedness of the company. Such power is not expressly conferred, nor is the taking of such bond a necessary or proper means of providing for the payment of losses and expenses. Such a bond, therefore, as an executory contract, is void.

APPEAL from the Superior Court of *Milwaukee* County.

Action upon a bond executed by policy-holders of a mutual insurance company for the purpose of establishing a guaranty fund. The facts are stated in the opinion. The defendants appeal from an order overruling a demurrer to the complaint.

*Geo. E. Sutherland,* appellants' counsel, argued, among other things, that the insurance company had no power to create or accept the fund established by the bond in suit. The statute (secs. 1909–1915, R. S.) expressly provides how such a fund may be created, what it is, and how it may be used. But the fund in question was not created under or in accordance with the statute, and hence is unauthorized and invalid. Secs. 1941a–1941g, S. & B. Ann. Stats., point out just what the capital of this kind of a company must

consist of. And this attempt to add to that capital is invalid because not authorized by statute. A corporation takes the rights and powers conferred upon it by statute, and can claim no right and do no act not authorized by statute, "not even as a means of raising funds to accomplish things authorized." *Dietrich v. Madison R. Asso.* 45 Wis. 79–84; *Jemison v. Citizens' S. Bank,* 122 N. Y. 135, 140; *Bank of Augusta v. Earle,* 13 Pet. 588; *National Trust Co. v. Miller,* 33 N. J. Eq. 155–162; *Rochester Ins. Co. v. Martin,* 13 Minn. 59. This company, organized under sec. 1941a, S. & B. Ann. Stats., was authorized to insure upon the mutual plan only. The mutual plan means the mutual liability of every member of the company to contribute his share for losses and expenses. *Rundle v. Kennan,* 79 Wis. 492. But the taking of this guarantee bond, if permissible, converts the company into something else than a mutual insurance company. See *State v. Monitor F. Asso.* 42 Ohio St. 556–564; *Comm. v. Mass. Mut. F. Ins. Co.* 119 Mass. 45–50; *Warner v. Schoharie & S. Counties Farmers' Mut. F. Ins. Co.* 15 N. Y. Supp. 632.

If it be said that persons have insured with this company relying upon this guaranty fund, the answer is that they were bound to know what the corporation could and could not legally do, and they have no right to rely upon what they know was illegal. "A person who enters into a contract with a corporation is bound at his peril to take notice of all the legal limitations of its capacity." *Davis v. O. C. R. Co.* 131 Mass. 259; *Alexander v. Cauldwell,* 83 N. Y. 480; *Franklin Co. v. Lewiston S. Bank,* 68 Me. 43; *De Bost v. Albert Palmer Co.* 35 Hun, 386; *Rice v. Peninsular Club,* 52 Mich. 87; Beach, Corp. § 383. And it is especially true that every person who insures in a mutual insurance company is bound to know the laws and rules which govern it and fix the liability of its members, and is bound to know the statute under which it is organized, and bound to know

that the essential element in the case is mutual liability. *Pfister v. Gerwig,* 122 Ind. 567; *Miller v. Hillsborough Mut. F. Ass. Asso.* 42 N. J. Eq. 459; *Am. Ins. Co. v. Stoy,* 41 Mich. 385; *Diehl v. Adams Co. Mut. Ins. Co.* 58 Pa. St. 444; *Coles v. Iowa State Mut. Ins. Co.* 18 Iowa, 426; *Satterthwaite v. Mut. Ben. Ins. Asso.* 14 Pa. St. 393; *Lattomus v. Farmers' Mut. F. Ins. Co.* 3 Houst. 404; *Fuller v. Madison Mut. Ins. Co.* 36 Wis. 599. In a mutual insurance company every policy-holder becomes a member of the company, and is bound by the acts of the officers of the company. Their acts are his acts. *Koehler v. Beeber,* 122 Pa. St. 291; *Am. Ins. Co. v. Stoy,* 41 Mich. 385, 395. And see *Trenton M. L. & F. Ins. Co. v. McKelway,* 12 N. J. Eq. 133; *National Trust Co. v. Miller,* 33 id. 155, 160, 162; *Morris & E. R. Co. v. Sussex R. Co.* 20 id. 542, 564; *Lucas v. White Line Transp. Co.* 70 Iowa, 541.

A party to an illegal contract is not prevented from setting up the illegality. The law simply leaves the parties to an illegal contract where they put themselves. *Tylee v. Yates,* 3 Barb. 222, 228; *National Trust Co. v. Miller,* 33 N. J. Eq. 155, 160; *Safford v. Wyckoff,* 1 Hill, 11; *Swift v. Beers,* 3 Denio, 70; *Nourse v. Pope,* 13 Allen, 87; *State v. Monitor F. Asso.* 42 Ohio St. 555; *Workmen's Banking Co. v. Rautenberg,* 103 Ill. 460; *State v. Bartlett,* 30 Miss. 624; Port. Ins. 370; *Tracy v. Talmage,* 14 N. Y. 162.

See, also, *Mutual Ben. L. Ins. Co. v. Davis,* 12 N. Y. 569, 573; *North River Ins. Co. v. Lawrence,* 3 Wend. 482; *Beach v. Fulton Bank,* id. 573; *Farmers' & M. Bank v. Baldwin,* 23 Minn. 198; *New York T. & L. Co. v. Helmer,* 12 Hun, 35; *Montgomery v. M. & W. P. R. Co.* 31 Ala. 76; *Farmers' & T. Bank v. Harrison,* 57 Mo. 503, 511; *Chicago Building Soc. v. Crowell,* 65 Ill. 458; *Bissell v. M. S. & N. I. R. Co.* 22 N. Y. 285.

*G. W. Hazelton,* for the respondent: (1) The act of the directors in accepting the bond and placing it in the treas-

ury as part of the assets of the company was not *ultra vires*, and the bond is not void, but creates an obligation as against the defendants. A corporation "may adopt any proper and convenient means tending directly to accomplish the ends and purposes of the company, which do not amount to the transaction of a separate, unauthorized business." *Madison, W. & M. P. R. Co. v. W. & P. P. R. Co.* 5 Wis. 173; *Clark v. Farrington,* 11 id. 306; *Blunt v. Walker,* id. 334; *Farmers' & M. Bank v. D. & M. R. Co.* 17 Wis. 372; *Germantown F. M. Ins. Co. v. Dhein,* 43 Wis. 421; *Rock River Bank v. Sherwood,* 10 Wis. 230. And see *Salt Lake City v. Hollister,* 118 U. S. 256; *Penn. R. Co. v. Keokuk & H. Bridge Co.* 131 U. S. 371. As to the rule or policy which ought to govern the court in dealing with such questions when the rights of third parties are involved, see *Sawyer v. Hoag,* 17 Wall. 610. And for evidence of the modern tendency to enlarge rather than restrict the power of corporations, see Cook, Stocks (2d ed.), ch. 12. (2) When an act is done which, although not authorized in terms, is nevertheless within the limits of means fairly auxiliary to the objects of the corporation, and not in violation of public policy, the corporation cannot escape its moral or business obligations by the plea of *ultra vires. Rock River Bank v. Sherwood,* 10 Wis. 230; *Bissell v. M. S. & N. I. R. Co.* 22 N. Y. 262; *Whitney Arms Co. v. Barlow,* 63 N. Y. 63; *Leslie v. Lorillard,* 110 N. Y. 519; *In re Miller,* 1 Pa. St. 326; *Farnsworth v. Robbins,* 36 Minn. 369; *Comm. v. Manufacturers' M. F. Ins. Co.* 11 Phila. 552; *Moss v. Rossie Lead M. Co.* 5 Hill, 140; *Chicago Build. Soc. v. Crowell,* 65 Ill. 459; *Willmarth v. Crawford,* 10 Wend. 342; *Sanger v. Upton,* 91 U. S. 56; *Payson v. Withers,* 5 Biss. 279; *Mott v. U. S. Trust Co.* 19 Barb. 568; *Railway Co. v. McCarthy,* 96 U. S. 267; *Matt v. Roman Cath. Mut. Prot. Soc.* 70 Iowa, 455; *Oil Creek & A. R. R. Co. v. Pennsylvania Transp. Co.* 83 Pa. St. 160; *Chicago & Atl. R. Co. v. Derkes,* 103 Ind. 520;

Beach, Priv. Corp. §§ 421, 422. (3) In *Waldo v. C., St. P. & F. du L. R. Co.* 14 Wis. 575, the question was raised whether a grantor of lands to a corporation, under a contract which the corporation has no authority to enter into, can reclaim the lands on the ground that the grantee could not take title, or whether the title is defeasible only by the state; citing some cases in which the latter view was taken. This question has since received further consideration, and it would appear that the law of those cases has been very generally accepted. *Cowell v. Springs Co.* 100 U. S. 60; *Nat. Bank v. Matthews,* 98 U. S. 628; *Natoma W. & M. Co. v. Clarkin,* 14 Cal. 552; *Hayward v. Davidson,* 41 Ind. 214; *Barnes v. Suddard,* 117 Ill. 237; *De Camp v. Dobbins,* 29 N. J. Eq. 36; *Baker v. Neff,* 73 Ind. 68; *Gilbert v. Hole,* (S. D.), 49 N.W. Rep. 1. Under the doctrine of these authorities the power of the corporation to take such a bond becomes immaterial in an action, like this, to enforce the bond. (4) The defendants are estopped from claiming that the bond was void for want of consideration, or any kindred defense. The fact of the making of this bond was advertised to the public as the basis of business between the company and its patrons, and the business of the company was thereafter prosecuted on the strength of such bond, as just so much cash capital in the treasury of the company. (5) If a consideration is required beyond that implied in the use of the seal, there is ample ground for claiming a consideration in the interest which defendants had in the success of the company. (6) The agreement laid upon each of the defendants an obligation to pay in, as the call should be made, necessary sums (not exceeding the subscription) to pay the losses and expenses of the company. The promise is predicated upon the purpose to establish a guaranty fund, and runs to the said company, and seems to be ruled by the following cases: *Salem Mill-Dam Corp. v. Ropes,* 6 Pick. 23; *South Bay Meadow Dam Co. v. Gray,* 30 Me. 547;

*Duchess Cotton Manufactory v. Davis,* 14 Johns. 238; *Townsend v. Goewey,* 19 Wend. 424; *Contoocook Val. R. Co. v. Barker,* 32 N. H. 369; *Gibbons v. Grinsel,* 79 Wis. 365; *White v. Haight,* 16 N. Y. 310. (7) The fact that the directors failed to make the call is wholly immaterial. Cook, Stocks, § 108, and note 1; *White v. Haight,* 16 N. Y. 324, and cases cited. (8) The defendants might have been sued severally in an action at law. But the receiver was appointed by the court sitting as a court of equity, and the entire proceedings are in that forum. The question whether an action should or could have been brought before the liability of the defendants should be adjudged, could not be raised in a simple action of *assumpsit* on the agreement, and as any appropriate judgment may be rendered in equity the question is of little importance. *Leonard v. Rogan,* 20 Wis. 542; *Murtha v. Curley,* 90 N. Y. 372. Under all the circumstances of the case it was proper and the better practice to go into a court of equity. *Hatch v. Dana,* 101 U. S. 205; *New York & M. H. R. Co. v. Schuyler,* 17 N. Y. 592; *Pfohl v. Simpson,* 74 N. Y. 137; *Geery v. N. Y. & L. S. S. Co.* 12 Abb. Pr. 268; *Mann v. Pentz,* 3 N. Y. 415; *Matter of Empire City Bank,* 18 N. Y. 210; *Kilbourn v. Sunderland,* 130 U. S. 514.

In reply, appellants' counsel argued, among other things, that the question is not whether this company might hold title to property conveyed to it as a gift, but whether it can enforce an executory agreement, the effect of which is to relieve its members from their statutory liability. There is a manifest difference between executory and executed contracts. *Land v. Coffman,* 50 Mo. 243; *Shewalter v. Pirner,* 55 id. 218; *Matthews v. Skinker,* 62 id. 329; *S. F. Gas Co. v. San Francisco,* 9 Cal. 453; *Nassau Bank v. Jones,* 95 N. Y. 115; *Argenti v. San Francisco,* 16 Cal. 255; *Bradley v. Ballard,* 55 Ill. 417. This distinction has not always

been preserved; but there has been no deviation from it, except to hold in some cases that even an executed *ultra vires* contract is void for every purpose. *Zottman v. San Francisco*, 20 Cal. 96. The doctrine of estoppel does not apply. *Penn., Del. & Md. S. Nav. Co. v. Dandridge*, 8 Gill & J. 248; *Franklin Co. v. Lewiston Sav. Bank*, 68 Me. 43; *Central Transp. Co. v. Pullmans' P. C. Co.* 139 U. S. 24–54; *Parish v. Wheeler*, 22 N. Y. 508; *Hood v. N. Y. & N. H. R. Co.* 22 Conn. 502; *Memphis v. Memphis Gayoso Gas Co.* 9 Heisk. 543; *Downing v. Mt. Wash. Road Co.* 40 N. H. 230; *Hays v. Galion G. L. & C. Co.* 29 Ohio St. 340; *Chewacla Lime Works v. Dismukes*, 87 Ala. 344; *Thompson v. Lambert*, 44 Iowa, 248; *Mallory v. Hanaur Oil Works*, 86 Tenn. 598; *Wright v. Hughes*, 119 Ind. 329; *Holt v. Winfield Bank*, 25 Fed. Rep. 812; *Scoville v. Thayer*, 105 U. S 143, 151. Sec. 1941e, R. S., provides that when a loss occurs which requires an assessment, " the president and the officers of the corporation shall make an assessment sufficient to pay such loss, upon all the property insured." This is the method pointed out to pay losses, and *expressio unius est exclusio alterius* applies. *Matthews v. Skinker*, 62 Mo. 329; *Thomas v. Railway Co.* 101 U. S. 71; *Crocker v. Whitney*, 71 N. Y. 161. This principle is especially applied when the question arises between the members of a mutual insurance company, because " its constituent members are charged with full knowledge of the want of power in the corporation to make the particular contract." *Rockhold v. Canton M. M. B. Asso.* (Ill. Sup.), 19 N. E. Rep. 710.

ORTON, J. The Manufacturers' Mutual Fire Insurance Company of Milwaukee was organized under secs. 1941a– 1941g, S. & B. Ann. Stats., and continued in business until November 5, 1890, when it became embarrassed, and suit was brought under secs. 3218, 3219, R. S., to close up its

affairs; and the plaintiff was appointed the receiver thereof, and authorized to bring suit to enforce the collection of the outstanding credits of the company.

The complaint states "that on or prior to the 5th day of October, 1889, the condition of the company was unsatisfactory and discouraging; that many policies of insurance were outstanding against the company; that the amount of losses reported was large, the amount of money in the treasury limited, and the company was in embarrassed circumstances; . . .. that for the purpose of strengthening the credit and standing of the company, and providing it with a substantial basis to continue and prosecute its business, and to secure and protect the policy-holders, and supply it with ready means for meeting its liabilities, past and present, . . . it was determined to execute a bond or undertaking, in the sum of fifty thousand dollars, by the managers of the said company; . . . which said bond was so executed and delivered for the benefit and in the interest of all those parties who had then, or should thereafter have, actual or contingent claims upon or against said company under their contracts of insurance; and was so intended and understood by the signers," etc.

The bond executed for the purposes aforesaid is, in substance, "that we, the undersigned policy-holders [of the company], a corporation organized and existing under the laws of Wisconsin, for the purpose of establishing a guaranty fund for [the said company], and to establish the credit of said company upon a more firm basis, do hereby, for value received, severally promise and agree, to and with each other, and to and with said company, that we will, and each of us does hereby, guaranty the payment of the existing and future indebtedness of [said company] to the amount of the several sums below set opposite our respective names, but no further; and we each of us hereby

pledge ourselves, and each binds himself, his heirs, etc., to pay into the treasury [of the company], upon the ·call of the board of directors of said company, from time to time, as calls may be made, or within ten days thereafter, such *pro rata* of the several amounts below set opposite our ·respective names as said board of directors may wish, for the payment of the *losses* and *expenses* of said company." Then follow the signatures of the defendants in this suit, with various sums set opposite their respective names, amounting in the aggregate to $50,000. This bond was duly accepted, ratified, and approved by the board of directors of the company.

This action is predicated on this bond, undertaking, or promissory note, or whatever it may be, with the necessary and proper averments in the complaint.

The defendants demurred to the complaint on the grounds, *first*, that the plaintiff had not the capacity to sue; *second*, that several causes of action are improperly joined; and *third*, that the complaint fails to state facts sufficient to entitle the plaintiff to recover. The demurrer was overruled, and this appeal is from said order.

It would not be· in the interest of the company, or of the defendants, to have the action suspended on either of the first two grounds of the demurrer, even if sufficient. The policy-holders, creditors, and the defendants ought to know, as early as practicable, whether the bond can be relied on as an asset of the corporation. We shall therefore consider the important question whether the bond is valid, or *ultra vires* and void. We have been furnished with able briefs and arguments by the learned counsel on both sides on this question. The learned counsel of the appellants contend that this corporation, as a mutual insurance company, had no power by its charter to take this guaranty bond, and that therefore it is *ultra vires*. By the authority of *Clark v. Farrington*, 11 Wis. 306, this question may be

twofold: (1) Was the power to take such an instrument for such a purpose expressly conferred upon the company by its charter? (2) Was the taking of such a guaranty obligation the necessary or proper *means* of executing some power conferred. *Madison, W. & M. P. R. Co. v. W. & P. P. R. Co.* 7 Wis. 59. As said in this last case, "it is not contended that the guaranty which the plaintiff acquired was expressly authorized by the charter." It certainly could not be contended that any such express power is conferred. If the power exists at all, it must be inferred from the general powers given. The principle governing this question, with its limitations and scope, is as well settled in the above cases and those following them in this court as anywhere in this country.

Is this scheme or method of raising a fund to meet the *losses* and *expenses* of this company the necessary and proper means of accomplishing this object, and within the powers expressly granted? We are satisfied that it is not. It must be conceded that such an object is one of the legitimate objects to be accomplished by the company. The question, so limited, may easily be applied when we understand the nature and legal character of a mutual insurance company, in view of the statute under which it is organized. It is not essential to the raising of such a fund that a premium note be taken, for "the members of the company would all be bound to contribute to pay the losses sustained by the company, and would form a mutual insurance company, in the strict legal sense of these words," if even the first premium should be paid in money, instead of the taking of a premium note. The one thing absolutely essential to a *mutual* company is the obligation of the members to pay their *pro rata* share of the necessary expenses and losses of the company, and that they are bound to so contribute. All the members of the company assume this obligation, and are so bound, by virtue of sec. 1941*e*, R. S., whether

they pay the premium in cash in the first place, or give premium notes. This section "authorizes an assessment to pay losses and expenses upon the property insured, without any exception. The effect of this provision is to make a cash policy-holder a member of the company, and liable to pay assessments for losses." That section provides that "whenever any loss has been ascertained which requires an assessment to be made, then [the officers of the company] *shall make an assessment* sufficient to pay such loss, *upon all the property insured.*" The above quotations are taken from the opinion of Chief Justice COLE in the late case of *Rundle v. Kennan,* 79 Wis. 492. This *mutuality* of liability to assessment, and obligation to pay *pro rata* for losses and expenses, are the essential and distinguishing characteristics of a *mutual* insurance company.

It is contended by the learned counsel of the respondent that such a company has no way of accumulating a cash fund, to be devoted to the objects of the corporation or to be treated as cash capital, by means of such assessments alone. By the authority of the above case the first premium may be paid in cash. *Second,* "at the time of affecting the insurance, the persons insured shall pay a *percentage* in *cash.*" *Third,* and "such other charges as may be required by the by-laws of the corporation." Here is a very large power to raise cash capital without resorting to such a guaranty bond. A mutual insurance company is not a business corporation for the accumulation of capital or profits. The members secure their profits and pecuniary advantages by their mutual insurance of each other; and, if the expenses and losses can be paid, the full object of such a corporation would seem to have been attained. All the members are equally interested in the objects to be attained, and it is not supposed that they will make profit of each other, beyond securing these objects. But the statute allows the accumulation of sufficient cash capital to answer

all the purposes of such a limited corporation. It must not be overlooked that this is not a *stock* corporation. The mutuality of obligation, insurance, and of all the advantages, is the main and essential feature of such a corporation, that must not in any respect be wanting, superseded, or impaired. When this principle of mutuality is violated in any essential particular of its business management, it so far ceases to be a *mutual* company. *Rundle v. Kennan*, 79 Wis. 492. It follows, therefore, that if the money to be paid for all losses and expenses is to be raised through such a guaranty bond or by other extraneous means, and the members of the company are thereby exempted from assessments and the payment of their *pro rata* shares of such losses and expenses proportionate to their insurance, this essential feature of mutuality is entirely destroyed, and the company ceases to be a mutual insurance company.

If such a foreign resource is resorted to to relieve the members partially, or some of them only, of such assessment, to that extent the mutuality principle is destroyed, and the nature and legal character of the corporation subverted *pro tanto*, and the company ceases to be such a corporation as the law requires, wholly or partially. It is not simply the substitution of other means than the law provides for the payment of losses and expenses, but it destroys the essential nature and legal character of the corporation as a mutual insurance company. The statute not only provides that the officers of the company "*shall* make an assessment sufficient to pay such loss," but the very nature of such a company makes this method of raising money to pay such losses and expenses imperative and indispensable. It follows, also, that such a guaranty bond is not the necessary or proper means for carrying out the objects and executing the powers of the corporation, which objects and powers are to pay losses and expenses, and the power to do so does not exist. These must be the clear, logical,

and legal conclusions drawn from the nature and legal character of the corporation. Not only has the company no legal power or authority to do this, but it is in violation of the law and illegal.

The learned counsel of the respondent has cited no case that comes anywhere near sanctioning such a doctrine. The cases are neither in point nor analogous. On the other hand, the learned counsel of the appellants cite many authorities close in analogy with this, and several in point holding that the taking of such a security is not only *ultra vires*, but void while still executory. The case of *Trenton Mut. L. & F. Ins. Co. v. McKelway*, 12 N. J. Eq. 133, is clearly in point. The company had similar powers. If losses occurred exceeding their means to pay, the company was to make assessments ratably on the members according to the amount of each member's insurance. Instead of doing this, they took guaranty money bonds, secured by mortgage, to the amount of $150,000, and an assessment was to be made thereon, as provided in this obligation. In a suit on one of the mortgages it was held "that the corporation had no power to enter into the contract with the contributors to the guaranty fund, and that such contract was *illegal* and void, and could not be enforced in a court of law or equity." Held, also, that the charter of the insurance company "makes its members mutual insurers, and constitutes a fund to meet losses, made up from premiums to be contributed by the members, . . . and *no other fund* can be created for that purpose." This case is cited approvingly in *Morris & E. R. Co. v. Sussex R. Co.* 20 N. J. Eq. 564, and *National Trust Co. v. Miller*, 33 N. J. Eq. 160. In *Pennsylvania R. Co. v. St. Louis, A. & T. H. R. Co.* 118 U. S. 630, it is held that a lease by one company to the other, not authorized by the charter, was void as to both lessor and lessee. In this case, *Madison, W. & M. P. R. Co. v. W. & P. P. R. Co.* 7 Wis. 59, above cited, is

Kennan vs. Rundle and others.

cited approvingly.  In *Central Transp. Co. v. Pullman's P. C. Co.* 139 U. S. 24, the first-named company leased its business and property to the last-named company, of another state.  It was held that the contract was unlawful and void, because beyond the corporate powers of the lessor, and that no action could be maintained by the lessor on the contract to recover the sums thereby payable, *even while the lessee had enjoyed the benefits of the contract.*  In *Salem Mill Dam Corp. v. Ropes,* 6 Pick. 23, it is held that, "if a corporation is created with a specific fund limited by the act, it cannot enlarge or diminish that fund but by license from the legislature."  An insurance company has no right to receive accessions to its funds from sources not authorized by its charter.  *Dietrich v. Madison R. Asso.* 45 Wis. 79; *Jemison v. Citizens' Sav. Bank,* 122 N. Y. 135; *Bank of Augusta v. Earle,* 13 Pet. 588; *National Trust Co. v. Miller,* 33 N. J. Eq. 160; *Rochester Ins. Co. v. Martin,* 13 Minn. 59.  When the legislature had authorized the city of Milwaukee to raise and expend $100,000 on the harbor at that place, the city could not bind itself exceeding that limit; and the contract for such purpose is void for want of power.  *Hasbrouck v. Milwaukee,* 13 Wis. 37.  Where an insurance company is authorized to take the notes of its members for insurance, it cannot take the note of a third person for such purpose.  *Mutual Ben. L. Ins. Co. v. Davis,* 12 N. Y. 569.  Where a corporation had no power to loan money, a note taken for a loan is void.  *Beach v. Fulton Bank,* 3 Wend. 573.  Corporations can do business in no other way than prescribed by their charters.  *N. Y. T. & L. Co. v. Helmer,* 12 Hun, 35; *Montgomery v. M. & W. P. R. Co.* 31 Ala. 76; *Farmers' & M. Bank v. Baldwin,* 23 Minn. 198; *Farmers' & T. Bank v. Harrison,* 57 Mo. 503. Where the statute provides for the payment of losses and expenses by making assessments on the members, the company cannot adopt any other plan or means of doing so.  This

power being *expressly* given, and to be carried out in a *particular* way, excludes all other measures and resources. *Matthews v. Skinker,* 62 Mo. 329; *Thomas v. Railroad Co.* 101 U. S. 71; *Crocker v. Whitney,* 71 N. Y. 161.

There are cases where the contract may be *ultra vires,* but not void, according to many authorities, where equitable estoppel or the full execution of the contract may deter the interference of the courts to afford relief; but this is not one of them. This contract is executory, and the court is asked to enforce it, and there are no equities to palliate such a radical departure from the powers conferred by the charter, and assumption of powers not only foreign but which, if executed, would subvert the purposes and radically change the nature of the corporation. In such cases there is no conflict of authority that the contract effecting such change is not only *ultra vires* but void. All the cases of the supreme court of the United States, and a preponderance of the cases elsewhere, make no distinction between executory and executed contracts in declaring the contract absolutely void. But we are not concerned in that distinction. Reference may be had to many other cases in the brief of the learned counsel of the appellants. This contract is unquestionably void.

*By the Court.*— The order of the superior court is reversed, and the cause remanded with direction to sustain the demurrer, and for further proceedings according to law.