Knights Templars and Masons Life Indemnity Co.

*v.*

Henrietta H. Vail.

*Opinion filed December 16, 1903.*

1. Benefit societies—*a society stands as a trustee for the members.* The members of a benefit society, and those persons named in the statute bearing certain relations to them, are the beneficiaries of all funds realized by the society, and the society stands as a trustee handling the funds.

2. Same—*in absence of statutory authority society cannot create surplus fund.* In the absence of statutory authority a benefit society has no right to collect funds from the members in the way of dues and assessments in excess of the amount necessary to pay death losses, indemnities and reasonable expense of conducting the business.

3. Same—*when society cannot make bonds the medium for paying assessment.* If a benefit society, by its constitution, devotes the surplus or guaranty fund created under section 8 of the act of 1883 (Laws of 1883, p. 107,) to the one object of paying assessments, the society cannot make bonds issued by it against the fund the medium of payment instead of the member's interest in such fund.

4. Same—*when society must apply surplus fund to unpaid assessment without notice.* Under a constitution providing that the surplus fund created under section 8 of the act of 1883 shall be used, "without notice, in payment of assessments," it is the duty of the society, if a member entitled to the benefit of the fund shall fail to pay proper assessments, to apply such fund upon the assessments, without notice, so long as it is sufficient to pay them.

5. SAME—*when society cannot make member's right to surplus depend upon surrender of bond.* If the constitution of a benefit society provides that the surplus fund shall be used, "without notice, in payment of assessments," a bond issued to evidence a member's share in such surplus cannot make his right to the application of the fund upon his unpaid assessments depend upon notice to the society in the form of an application to surrender the bond and apply his entire interest to such payment.

6. SAME—*when acceptance of bond does not change member's interest in surplus fund.* Acceptance by a member of a benefit society of a bond containing provisions which are not in accord with the constitution of the society does not operate to change his interest, under the constitution and benefit certificate, in the surplus fund against which the bond was issued, where there is no question of estoppel in the transaction.

7. SAME—*laws, rules and regulations construed strictly where a society attempts forfeiture.* Where a benefit society is attempting to work a forfeiture of a member's rights, the laws, rules and regulations of the society will be most strictly construed against it.

*Knights Templars Indemnity Co.* v. *Vail,* 105 Ill. App. 331, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the First District affirming a judgment of the superior court of Cook county in favor of appellee, and against appellant, for $5392.50, in an action of assumpsit on a benefit insurance certificate. The cause was heard upon a stipulation of facts, and with an agreement that all pleadings, other than the declaration, should be waived and the cause disposed of according to certain issues formulated by the parties by their stipulation. The trial was before the court without a jury, and the questions of law were preserved by propositions of law submitted to the court to be held or refused.

Appellant is a corporation organized in 1884 under the provisions of "An act to provide for the organization and management of corporations * * * for the pur-

pose of furnishing life indemnity or pecuniary benefits to widows, orphans, heirs, relatives and devisees of deceased members," etc., approved June 18, 1883. (Laws of 1883, p. 104.) Section 8 of the act authorizes "the accumulation of a surplus, general or guaranty fund, which may be invested only in the corporate name of the association or society, in United States, State, county, city or other first-class convertible bonds or stocks, upon which interest has not been in default. Such funds, when so set apart and so invested, shall, with the increase thereof, belong to such corporation, association or society, and not to the directors, trustees, managers or officers thereof; and shall be used only for mortuary benefits, without assessment, or applied in payment of future assessments, or otherwise used for the promotion of the object or objects for which said funds are specially provided and set apart, and such use shall not be deemed or construed to mean a profit received by members within the meaning of the statutes of this State."

Appellant, upon its organization, adopted certain by-laws, which it termed a constitution, and which, by the provisions thereof, could not be changed or modified except by a vote of the members of the company, upon a three-fourths vote of all voting, after a thirty days' notice to every member of the society of the proposed amendment. The surplus fund was provided for by applying seventy-five per cent of the moneys arising from assessments to the credit of the death fund, and to be used for the payment of death losses only, and out of the remaining twenty-five per cent the expenses and the emergencies were to be met, and the remainder was to form the surplus fund authorized by the statute above. By section 2 of the constitution, so made with reference to this surplus fund, it was provided as follows: "At the end of each ten years' continuous membership such member shall receive a bond, bearing three per cent annual interest, for such a proportion of the surplus, on the first

day of the month nearest preceding, as all the money paid during the ten years by him on his existing policy bears to the entire amount of money received by the company during the same period." By section 3: "Any such bond can be used at par, and accrued interest, at any time, without notice, in payments of assessments, and no bond shall run longer than the life of the member, but if unused shall be payable with his policy at death."

On October 26, 1888, Charles A. Vail made a written application for membership in the company, and a certificate or policy was issued to him of date November 2, 1888, of which the application and the constitution of the company were a part. In the application said Charles A. Vail agreed "to abide by the constitution, rules and regulations of the company as they now are or may be constitutionally changed hereafter." Said insured held his policy and paid all assessments for more than ten years, and appellant, as of date of the second of November, 1898, issued and delivered to him what it denominated its bonds for his share of the accumulated surplus, in supposed compliance with the provisions of the constitution of appellant company. The bond recited that it was issued and received in pursuance of the provisions of sections 2 and 3, article 7, of the constitution. This writing bears no resemblance to a bond, but is a written acknowledgment of appellant that the share of the surplus fund to which said Charles A. Vail, as holder of policy No. 6261, was entitled, was $66.30, which the company binds itself to pay, "with interest at the rate of three per cent per annum, in the manner, for the purpose and upon the terms and conditions following," etc. The bond then contains the provision that "this bond, with accrued interest, may be used at par by the said member, at any time during his life, in payment of assessments or dues on said policy, but in that event this bond shall be surrendered by him to said company for cancellation, and the amount thereof, with accrued interest,

shall be placed to his credit as a deposit in advance for the payment of such assessments or dues; that in order to use this bond in payment of assessments or dues on said policy the bond must first be surrendered to and in the possession of said company for cancellation," etc. Attached to this bond was a red label, which again pointedly called the attention of the policyholder to the provision that no part of the bond could be applied to keep the policy in force except by its being surrendered to the company. This so-called bond was formulated and issued by appellant's board of directors pursuant to a resolution or by-law adopted by said board of directors, without any change having been made in sections 2 and 3, article 7, of the constitution of the appellant company. After receiving this bond Charles A. Vail continued to pay assessments, as they were called, up to and including the assessment of May, 1899. On June 2, 1899, appellant issued notice of assessment No. 182, payable June 12, 1899, and mailed the same to Vail, and it was received by him. Section 2 of article 6 of the appellant's constitution provided: "Should any member fail to pay or to forward, as indicated in the notice, the amount thus due, for a period of ten (10) days after the depositing of said notice in the United States post-office or mail box in the city of Chicago, such failure to so pay or forward the amount due shall thereby and *ipso facto* work a forfeiture and termination of his membership and all benefits arising therefrom." The assessment called for June 2 was not paid by Charles A. Vail, or anyone for him. It was for the sum of $15. At the expiration of the time provided in the notice his policy was canceled on the books of the company for the non-payment of this assessment. No assessment was levied against him after that time, and he never offered to pay the assessment or any subsequent assessment. The assessment notice informed him that the assessment was due and must be paid within ten days from mailing thereof, and

he was requested to give the same his immediate attention. He died on October 2, 1899, leaving appellee, his wife, surviving, who, under the provisions of the policy or certificate of membership, was the beneficiary.

Following the stipulation of facts, and as a part of the stipulation between the parties, were certain propositions, termed "propositions of law," as follows:

"It is admitted by the plaintiff that there was a valid forfeiture of the policy, membership and all interest of the insured in the defendant company for the non-payment of the June, 1899, assessment, unless such forfeiture was prevented, as a matter of law, in the manner hereinafter set forth in the plaintiff's claim.

"The plaintiff's claim is, that said policy and membership did not forfeit for non-payment of the June, 1899, assessment, because the insured had an interest in the funds of the defendant company, to the extent evidenced by the paper designated a bond, at the time when forfeiture would otherwise have occurred by non-payment of said assessment, which said interest was not forfeited, and should have been applied, without any action on the part of the insured, to the payment of this and subsequent assessments.

"The defendant's claim is, that under the provisions of the contract and paper designated a bond, the non-payment of the June, 1899, assessment worked a forfeiture of the policy, membership and paper designated a bond, together with every interest, of any kind, which insured theretofore had in the defendant company, and terminated his connection with the defendant company.

"It is admitted that if the insured had offered the paper designated a bond for surrender and cancellation at any time when the said June, 1899, assessment was payable he would have received credit for the amount thereof, with accrued interest, and the amount so credited would have been applied first to the payment of the June, 1899, assessment, and the balance would have been

applied to the payment of future assessments and dues until exhausted.

"It is admitted by the defendant that if said paper designated a bond had been so offered and surrendered and the amount thereof credited, such amount would have been sufficient to pay the June, 1899, assessment and all subsequent assessments levied on its membership prior to the death of the insured.

"It is further agreed that if the court holds, on the foregoing proposition of law, in favor of the plaintiff and against the defendant company, then a judgment may be entered against said defendant company for the sum of $5000, and interest thereon at the rate of five per cent per annum from December 11, 1899, to the date of entering such judgment, and that if the court holds, on the foregoing proposition of law, in favor of said defendant company and against said plaintiff, then judgment may be entered herein against plaintiff herein for costs."

Appellant offered to the court thirty-six propositions of law, which it asked the court to hold, many of which were held as asked and many refused. The refused propositions were upon the contention of the appellant that the policy or benefit certificate of Charles A. Vail was legally forfeited, and that he could not have the surplus of $66.30 and accrued interest, or any part of the principal or interest, that was going to the benefit of his policy, applied toward the payment of the assessment called for, or any assessment, without first surrendering the bond and permitting the whole of said amount thus accrued to be placed in his account as advanced payments upon assessments.

WARD & GRAYDON, (E. M. ASHCRAFT, of counsel,) for appellant.

ELMER ALLEN KIMBALL, and SPENCER WARD, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

The appellant does not claim that sections 2 and 3 of article 7 of the constitution of the company were changed or modified after the certificate or policy in question was issued, but contends that the bond is in substantial compliance and conformity with those sections; and further contends that if it be held that the bond is more favorable to it than the constitution authorized, or is not in substantial conformity to the constitution, then the rights of the parties were fixed by the terms of the bond as a matter of contract, and that the acceptance of the bond by the assured was, as to all its terms, binding upon the assured and the beneficiary. By section 1 of article 4 of the constitution it is provided that the policy of membership "shall constitute the basis of settlement with the beneficiaries." The constitution, as it then existed, together with the application, comprised a part of the policy of membership, which, by express contract of the parties, was binding until constitutionally changed.

In determining whether the so-called bond in question is in substantial compliance with the constitution, it is necessary that we take into consideration the statute authorizing the formation of such company, and which constitutes its charter; the constitution, and the contract or policy of membership.

It may first be observed that appellant is not an ordinary insurance company, which pays tribute to the State upon the theory that it reaps from the business pecuniary profit, but, on the contrary, its existence is only authorized upon the theory, as the title of the act authorizing it provides, that it was organized "for the purpose of furnishing life indemnity or pecuniary benefits to widows, orphans, heirs, relatives and devisees of deceased members, or accident or permanent disability indemnity to members thereof." In the eye of the law the members, and those bearing certain relations to them,

are the beneficiaries of all the funds realized by such corporation, and not the corporation itself. The corporation stands but as a trustee handling the funds paid by the members, and to be re-paid to them and the beneficiaries authorized by the act according to the plain restrictions provided by the act. As such trustee, and in the absence of authority conferred by section 8 of the act, appellant would have had no right to collect funds from the membership, by way of dues or assessments, in excess of the amount necessary to pay death losses, indemnities and the legitimate and reasonable expenses of conducting the business of such company. By authority of section 8 a greater sum than was necessary for the purposes last above mentioned was in fact collected from the members of the company to create the guaranty fund therein authorized. By that section the appellant was authorized to appropriate that fund to the payment of mortuary benefits, future assessments, or for other objects not therein specifically mentioned but to be provided for by the company. The company saw fit, by its constitution, to devote that fund only to the payment of future assessments, with the provision that such part of it as should not be used in the payment of future assessments should be paid, with the policy, at the death of the holder. It is true, the constitution says that the member shall receive a bond, bearing three per cent annual interest, for his proportion of this surplus after his policy shall have run ten years. The statute expressly says that the fund thus set apart "shall not be deemed or construed to mean a profit received by members within the meaning of the statutes of this State;" and in fact and in reason it could not reasonably be so considered, because, by the constitution of appellant providing for this fund, the member received the benefit of only that portion of the surplus which he himself had paid, and the enjoyment of this benefit was postponed to him until he had paid upon his policy for the full period of ten years.

By section 3 of said article 7 it is said such bond can be used at par, and accrued interest, at any time, without notice, in payment of assessments, and the contention now is that, the constitution using the word "bond" as a medium of payment instead of the share of the surplus fund, such provision was binding upon the member, and that the bond in question is in compliance therewith. To this contention we cannot assent. If this association was of a fraternal character, as it purports to be, and its existence depended upon the continuance and enlargement of its membership, and it was not financially interested in the business but was acting as trustee for the members of it, then it was to its interest and to the interest of the company, both in the light of a corporation and an aggregation of members, that the policies of the members should be kept up and continued. This company was not supposed to profit by lapses and derive and have in its possession a large surplus from that source, which it could apply toward its individual profit or to the payment of its liability on policies, generally. When, by its constitution, it devoted this surplus fund to the one particular object of paying assessments, and provided that such payment should be made without notice, it could not, as we think, make the payment in bonds or require the assessment to be paid with bonds issued by it. By issuing this bond it was not divested of the fund, and did not promise to pay to the member, or to his order, or to anybody except to the beneficiary at his death, the sum of money therein mentioned, but the bond did contain the provision that the holder might, by presenting the bond and at once devoting the whole amount provided for in the bond to the payment of future assessments,—or, rather, to the payment of advance assessments, which was even more than the statute or the appellant's constitution required or authorized,—have the benefit of his proportionate share of this fund. The statute is, "the payment of future assessments," and the

appellant's constitution is, "in payment of assessments." The condition of the bond is, that the bond must be surrendered and the money at once appropriated to the advance payment of assessments. In other words, by this bond the policyholder was required, at the very moment that he used any part of this fund, to then and there appropriate the whole of it, and at once, as a payment upon assessments in advance of their accruement. We think the intention of the legislature, and of the membership when it formed its constitution, was, that this fund should rest in the hands of the company, and that if, as in the case at bar, by misfortune, oversight, accident or otherwise a member should fail to pay an assessment when called upon and within the provisions of the law, it was then the duty of appellant, without notice, so long as there was sufficient of that fund to pay the assessments, to apply and pay the same. Appellant's constitution, which was incorporated in the policy, does not require the policyholder to give notice, but the expression is, absolutely, "without notice," yet the bond that it issues not only requires notice, because the surrender of the bond must be upon the express application of the holder, with the statement that he wants to pay an assessment out of the fund, but, in addition thereto, as we have said, he must, by the terms of the bond, then and there appropriate the whole of it to the advance payment of assessments. It was not to the benefit of the members unless sickness or inability to pay should require the appropriation of the whole of it to the advance payment of assessments, and in the case at bar the assured paid his assessment for several months after he received the bond.

It is said, however, that the policyholder, by receiving the bond, contracted with appellant that it should hold the fund according to the provisions of the bond. If the bond was not in accord with the provisions of appellant's constitution at the time the policyholder received his policy, and if that constitution was not changed in

the manner therein provided, which was, that the policy-holder should have the right to vote upon the change, then how can it be said that there was any contract between the policyholder and appellant which changed his right? What consideration did he receive for releasing to appellant a valuable right he had? It cannot be claimed that he received any consideration, and if this bond can be binding upon any theory, it must be upon a supposed theory of estoppel. But how can appellant insist upon an estoppel? The only change in its course was, that it undertook to hold the money longer than, and to require of the policyholder more than, its constitution authorized. There is no pretense that through reliance upon the acceptance of such bond by the policyholder appellant pursued a course of business that if it be now required to change would be to its injury. In fact, there is no show of claim of injury to appellant. The bond purported, on its face, to be issued "for value received, and in pursuance of the provisions of sections 2 and 3, article 7, of the constitution of said company." Whether it did comply with the provisions of that constitution and the policy was a question of law, which we think the policyholder was not required to pass upon until the necessity arose. We think the policyholder had a right to receive and retain the bond as an evidence of the amount of the surplus which the company had, and which might be used for the benefit of his policy, without thereby waiving any of his rights in the premises and without consenting to any modification of the contract or supposed variation from the provisions of the constitution of the appellant company. *Pray* v. *Life Indemnity Co.* 104 Iowa, 114; *Shakman* v. *United States C. S. Co.* 92 Wis. 366; *Chicago Life Ins. Co.* v. *Warner*, 80 Ill. 410; *Welsh* v. *Chicago Guaranty Fund Life Society*, 81 Mo. App. 30; *Symonds* v. *Northwestern Life Ins. Co.* 23 Minn. 491.

The laws and rules of such associations as the appellant should be liberally construed in favor of the policy-

holder and beneficiary, and where an attempt is made to work a forfeiture by a benevolent association, its laws, rules and regulations will be most strictly construed against it.   *Coverdale* v. *Royal Arcanum*, 193 Ill. 91; *Grand Lodge* v. *Brand*, 29 Neb. 650; *Union Mutual Accident Ass.* v. *Frohard*, 134 Ill. 228.

Under the view we entertain, appellant had in its possession, from the time of the last payment made by the assured to the time of his death, ample funds in its hands which it was authorized by the constitution and contract with the assured to apply toward the payment of his assessments without notice to him or without request from him and without the surrender of the supposed bond.   In *Supreme Lodge O. M. P.* v. *Meister*, 204 Ill. 527, we said (p. 530): "In *Girard Life Ins. Co.* v. *National Life Ins. Co.* 97 Pa. St. 15, the court held that where an insurance company has in its possession dividends belonging to a policyholder more than sufficient to pay an assessment it cannot declare a forfeiture for non-payment, on the ground that the law does not favor forfeitures and never enforces them cheerfully, and will decline to enforce them when they are against equity and good conscience, and that it is not conscionable for a company to forfeit a policy when it has in its treasury more than enough of the assured's money to pay the assessment. And in *Elliott* v. *Grand Lodge*, 2 Kan. App. 430, it was held that where money sufficient to pay an assessment is in the treasury of the subordinate lodge, even though the latter may have made an appropriation of the fund which would show the assured in arrears, no forfeiture can be declared." See also Niblack on Benefit Societies, sec. 271.

The trial court did not err in refusing the propositions of law as complained of or in holding that the policy in question was not forfeited, and the Appellate Court properly affirmed its judgment.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*