# Southern Mutual Aid Association, *et al. v.* Boyd, *et al.*
## and
# Boyd, *et al. v.* Southern Mutual Aid Association, *et al.*

*Bill for Injunction and to Declare Acts of the Corporation Ultra Vires.*

[DECIDED MAY 9, 1906, 41 So. REP. 164.]

*Insurance; Mutual Benefit Insurance; Contract; Ultra Vires.*—A mutual benefit aid association organized under Sections 1116-1121, Code, 1896, and authorized by its charter to pay sick and death benefits to its members, out of funds accumulated from weekly assessments of its members, is without authority to issue certificates providing for the repayment to members holding such certificates of all weekly dues paid in by them, less sick benefits received by them, at the expiration of ten years from date of issuance of such certificates, such contracts being *ultra vires,* and destroying the mutuality of the obligations of the association.

[Southern Mutual Aid Association, *et al.* v. Boyd, *et al.* and Boyd, *et al.* v. Southern Mutual Aid Association, *et al.*]

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

The bill in this case was filed by two persons, holders of ordinary benefit certificates, for themselves and on behalf of such other holders of like ordinary benefit certificates who would come in and make themselves parties. The allegations made by the bill are that the respondent, the Southern Mutual Aid Association, and its president and secretary, were incorporation under and derived their powers from part 2, title 1, chapter 3, §§ 1547 to 1552 of the Code of 1886 brought into the Code of 1896 as chapter 28, article 3, §§ 1116 to 1121. That on Oct. 25th, 1901, respondent corporation procured an amendment to its original charter, and in the amendatory declaration claimed and sought to obtain additional powers: "To purchase, own and convey real estate necessary for offices not to exceed $100,000; to receive conveyances of real estate in payment of debts due to the corporation, to issue certificates to or agreements with the members of the association upon the birth of any child, upon decease, sickness or physical disability of such member, whether by accident or otherwise; to pay money, or render aid to him or those dependent upon him, or any beneficiary designated by him; and to receive and collect from said members dues or assessments at stated intervals for such agreements or certificates; to accumulate a fund for meeting and providing for the payment of such certificates, and to invest the money thus accumulated in bonds or other securities, or to lend the same on notes or notes secured by mortgage." The original purpose of the corporation before amendment of its charter was to comfort and assist all who may become member of said association, morally, socially and financially, to furnish financial aid to sick and destitute members of this association in the form of a stated weekly indemnity in case of sickness, and a stated funeral benefit, in case of death, graduated and determined by the amount of endowment secured and carried by each member upon his admission into the association. That pursuant to its powers the association has issued a large number of certificates for

[Southern Mutual Aid Association, *et al.* v. Boyd, *et al.* and Boyd, *et al.* v. Southern Mutual Aid Association, *et al.*]

sick benefit, birth of child, decease, sickness or physical disability of its members upon the payment of the weekly dues assessed, about 18,000 in all. That it has gone beyond its powers and issued certificates providing for the repayment to the holder of such certificate at the end of ten years from the issuance thereof all the dues paid in during the ten years by the holder less such weekly indemnity, sick benefit, etc., received by the member holding the certificate. That the association has no funds other than the weekly assessment or dues paid by the holders of the certificates, and that this fund is no more than enough to pay the expenses of the association and provide money to meet the sick, funeral and other benefit arising under the ordinary certificate; and that in order to provide sufficient funds to meet the requirement of the ten year certificates which are alleged to be about due, all the members of the association will be heavily assessed without receiving any benefit therefrom. The prayer is for an injunction prohibiting the association or its officers or agents from paying out of the fund of said association any money or sums of money to the holders of said ten year policies, or any of them, and from levying or collecting any special or additional assessment upon the policy holders for the purpose of paying said ten year policies, and to declare the action of the association in issuing said ten year policies, ultra vires and void.

CALDWELL & CARMICHAEL, Attorneys for Appellants on first appeal, and for Appellees on cross appeal.—The association avows itself, in its answer to be but the trustee of the policy holders. As a corporation, distinct from its beneficiaries, it has no pecuniary interest in the contributions of the policy holders. It shows by its answer that the premiums paid barely meet the demands of the ordinary policies; that it has relied upon the liberality of some of its officers to accumulate the legal reserves required by the several states in which it does business. It has no resources out of which to meet the large demands created by the tontine clause, of the so called ten year policies other than the right to levy special and ad-

dition assessments upon its members. The statutes from which it derives its powers contemplate that it will have its income from the contributions of its members. This principle distinguishes it as a muutal benefit society. The principle of mutuality of burdens and of benefits has distinguished this class of societies from their inception in England, where they have been in successful operation for more than two hundred years. This proposition being established it must result that the burdens and benefits must be widely and equally distributed. The contributions of all the members, as is shown, having been administered as one entire fund, and the ordinary members having received the benefits of the contributions made by the ten year policies should assume the burden of the ten year contracts, in common with the holders of the same. It is utterly impracticable after administering the fund, in this manner for ten years to disassociate the members, and to resolve them into two distinct classes; the contributions cannot be properly or equitably apportioned if such separation be made. Besides, it is obvious that to throw the burden of maturing the ten year contracts upon the holders of the same would result in great inequality, as between these persons. As their members decrease the burden upon them would increase, and the ones who persisted would be practically compelled to pay their policy out of their own pockets. The ordinary policy holders having associated themselves with the holders of the ten year policies, should be compelled to bear the consequences of this voluntary assumption of relationship.

GARRETT & DICKINSON, Attorneys for Appelle on first appeal, and for Appellant on cross.—A mutual association is a mere trustee of the funds paid in by its members.—*K. T. & M. Life Indemnity Co. v. Vail*, 68 N. E. 1103. They are self governing bodies.—*Hall v. West Travelers*, 96 N. W. 170. Such associations are not maintained for profit to themselves as a legal unit but for the benefit of their members in order to distribute the burden of individual misfortunes of a specified class

among the entire membership.—*Banker's Union of the World v. Crawford*, 73 Pac. 79; *Sherman v. Harbin*, 100 N. W. 622; *K. T. & M. Co. v. Vail*, supra; *Hall v. West Travelers*, supra; *Kleman v. Rundle*, 51 N. W. 430.

Corporations possess only such powers as are expressly granted or such as are necessary to carry into effect the powers expressly granted.—9 Cyc. 1096. A corporation has no authority to carry on any business or exercise any power not authorized by law and not necessary to carry into effect the purpose of its organization. The business and purposes expressed in its declaration are in the nature of limitations upon its power.—*Dartmouth College v. Woodward*, 4 Wheat. 518; *Simmons v. Troy Iron Works*, 92 Ala. 427; *State v. Stebbins*, 1 Stewart, 299; *Smith v. Ala. L. Ins. Co.*, 4 Ala. 558; *Montgomery v. M. & W. P. R. Co.*, 31 Ala. 76; *Grand Lodge v. Waddell*, 36 Ala. 313; *C. R. R. Co. v. Smith*, 76 Ala. 572; *Chewacla Lime Works v. Dismukes*, 87 Ala. 344; *State v. A. R. R. Co.*, 8 Am. St. Rep. 202. Note in 5 L. R. A. 100.

Contracts made by corporations in excess of their powers are void and not enforcible.—*Chewacla Lime Works v. Dismukes*, supra, and other cases cited above. A void policy is not enforcible.—*Smith v. Sherman*, 85 N. W. Rep. 748; *Russell v. Berry*, 51 Mich. 289; *Bankers Union of the World v. Crawford*, 73 Pac. 79; *Bloomington Mutual Life Benefit Association v. Blue*, 120 Ill. 11 N. E. Rep. 331.

Such corporation has only such powers as are conferred by the charter, and equity will restrain the exercise of powers not granted.—*Carlton v. So. Mut. Ins. Co.*, 72 Ga. 402; *In re. Mut. Ins. Co.*, 70 Am. St. Rep. 156, and note.

The Southern Mutual Aid Association did not have the power under its charter to make the agreement contained in its ten year policies promising to return, at the expiration of ten years from each policy, the whole amount of the premiums paid, less the sick benefits received by the insured. The statute under which the association has been doing business, and from which it derives its powers, does not give authority to issue such

contracts.—*Simmons v. Troy Iron Works,* 92 Ala. 427.

The rule is that a lawful promise made for a lawful consideration is not invalid merely because an unlawful promise was made at the same time and for the same consideration.—9 Cyc. 564; *Ware v. Curry,* 67 Ala. 374; *Robertson v. Hays,* 33 Ala. 290.

In a proper case, at the suit of the policy holders of other than ten year policies, a court of equity will restrain the association from paying the ten year policies either out of the ordinary funds of the association or by making assessments for that purpose.

The jurisdiction of equity can be evoked and exercised on two grounds; first, to restrain the association, and its officers from carrying out ultra vires contracts, harmful to the policy holders and violative of the corporate scheme, and, second, upon its well known power over trusts and trustees. It would enjoin the trustee (in this case the association) from misusing or diverting the trust fund.—2 Perry on Trusts, 816; *Duncan & Lane v. Simmons,* 2 Stew. & Port. 356; *Robinson & Caldwell v. Mauldin,* 11 Ala. 977; *Calhoun v. King,* 5 Ala. 523; *McDowell v. Brantly,* 80 Ala. 174; *Pollock v. The Farmers Loan & Trust Co.,* 157 U. S. 429; *Elkin v. Camden S. W. R. R. Co.,* 36 N. J. Eq. 5; *Wildes v. The Royal Homestead Co.,* 53 N. J. Eq. 425, 32 At. Rep. 677.

"Injunctions will be granted against corporations and their directors and officers to restrain acts wihch are illegal, ultra vires, or in violation of their fiduciary duties."—3 Pom. Eq. 3145 and note 1, same paragraph 1091.

TYSON, J.—The Southern Mutual Aid Association is strictly a mutual aid association under section 1116 et. seq. of the Code. The scope of the business of the corporation in the way of the payment of money, except for debts contracted in the usual and ordinary conduct of its business, as defined in its original charter is "to furnish financial aid to sick and destitute members * * * in the form of a weekly indemnity in case of sickness and a stated funeral benefit in case of death," and by an amendment to its charter, "to issue certificates to or

agreements with the members * * * upon the birth of any child, upon decease, sickness or physical disability of such member, * * * to pay money or to render aid to him or those dependent upon him, or any beneficiary designated by him, and to receive and collect from said members, dues or asesssments at stated intervals for such agreements or certificates," etc.; "to accumulate a fund for meeting and providing for the payment of such certificates and to invest the money thus accumulated," etc. The association, besides its ordinary business in issuing and providing for the certificates and agreements indicated in the quotations from its charter above mentioned, and which were clearly within its powers, undertook to issue certificates or policies binding the company, in consideration of certain dues and assessments to be paid, not only to pay the amount for which the certificate was issued upon the death of the member, or in case of sickness to pay the weekly benefit named therein as in ordinary cases, but at the expiration of 10 years from the date of the certificate, upon its surrender, "to return the amounts of dues paid to the said association less the amounts (if any) the person herein named may have drawn in case of sickness during that time." A large number of such certificates were issued, but, objection having been made to them by some of the officers of the state having supervision of insurance companies, the practice was discontinued and a number of the certificates were taken up by substituting the ordinary policies; but a number of such certificates, amounting to about 400, are still outstanding and will soon mature or commence maturing. This being the condition of affairs, the complainants below, as holders of the ordinary certificates issued by the company, and in behalf of themselves and of other holders and owners of policies issued by the corporation, except those holding the 10-year policies, filed their bill to prevent the collection of dues for the payment of said 10-year policies and to declare them invalid. Upon the final hearing of the case, the court below enjoined the collection of the said 10-year policies by assessments against the holders of the ordinary certificates, but in other respects held

the said policies good, and thereupon cross-appeals are prosecuted against the decree—one of the appellants contending that the provision in said 10-year policies "to return the amount of dues paid to said association, less the amounts (if any) the person herein insured may have drawn in case of sickness during that time" is wholly void; the other, that such stipulation is entirely valid and that the court erred in restricting the collection of dues at large to discharge said policies.

To determine the question here involved, it is first necessary to observe that the character of the particular kind of corporation, defendant in this case, is very different from ordinary private corporations. It appears to be strictly a trutsee for its members, having no property of its own, and having no object in the way of accumulating property and profits for itself, but only for the benefit of its members, in order to distribute the burden of individual misfortunes of a specific class among the entire membership. The distinguishing feature of such association is the strict mutuality of obligations and objects of benefits, and that "these must not in any respect be wanting, superseded, or impaired."— Kennan v. Rundle, 81 Wis. 212, 51 N. W. 430; Hall v. West Travelers Acc. Association, (Neb.) 96 N. W. 170; Knights T. & M. L. I. Co. v. Vail, 206 Ill. 404, 68 N. E. 1103. And it is a general proposition, universally recognized, that corporations have only such powers as are expressly given in their charters, with such incidental powers as are necessary for the carrying out of the objects of their charters.—Central R. R. Co. v. Smith, 76 Ala. 572, 52 Am. Rep. 353; Chewacla Lime Works v. Dismukes, 87 Ala. 344, 6 South. 122, 5 L. R. A. 100.

In this case it is insisted, in the first place, that the express powers of this corporation are limited by the charter to the payment of policies in case of sickness and to provide a funeral in the case of death of the member and by the amendment of its charter to pay policies upon the birth of any child, or upon decease, sickness, or physical disability of members, and that the stipulation in this instance to pay policies at the expiration of 10 years is ultra vires and unauthorized by the charter.

In the next place it is insisted that the mutuality of the obligations and benefits is destroyed by levying assessments upon the membership at large to pay the holders of the 10-year policies upon their maturity. Upon consideration, we are of the opinion that both of these contentions are correct.

Taking up the first question, we find that there is nothing in the charter authorizing the maturity of policies at any given period, or upon any event which could be predetermined. They are authorized only on birth of a child, or sickness, death, or physical disability. So strict is the law in this regard in reference to these particular corporations that it is held that they have no power to consolidate with other like associations, and that they have no power to receive a bond of indemnity to provide for lawful maturing obligations. Such corporations can neither do things not authorized nor use means not contemplated in the scheme of association.— *Bankers' Union of the World v. Crawford,* (Kan.) 73 Pac. 79, 100 Am. St. Rep. 465; *Simmons v. Troy Iron Works,* 92 Ala. 427, 9 South. 160; *Kennan v. Rundle,* 81 Wis. 212, 51 N. W. 430; *Dietrich v. Association,* 45 Wis. 79; *Jemison v. Bank,* 122 N. Y. 135, 25 N. E. 264, 9 L. R. A. 708, 19 Am. St. Rep. 482, *Rundle v. Kennan,* 79 Wis. 492, 48 N. W. 516; *Bank v. Earle,* 13 Pet. (U. S.) 588, 10 L. Ed. 274; *Rockhold v. C. M. M. B. Soc.* 129 Ill. 440, 21 N. E. 794, 2 L. R. A. 420

Taking up the second question, and bearing in mind that the essential and distinguishing feature of the mutual aid association is its mutuality of obligations and benefits, it seems evident that the class of contracts assailed in this case violates this principle. Holders of ordinary certificates must pay assessments to meet the death, sickness, and other legitimate claims as they occur, and they get nothing back until accident or misfortune has fallen to their lot. This is strictly mutual. But a holder of the 10-year policy does not at all contribute to pay the losses of others, since at the end of 10 years, though in perfect health, he receives back all his contributions, less what he has already received. And in case of his death or sickness before the expiration of 10

[Tillis, *et. al.* v. Folmar.]

years, he receives the full benefit of his policy, to be paid from the general fund of the society; that is, from assessments upon the members at large. There is no mutuality in this, and any such contract is unauthorized by the charter of the organization, and destructive of the organic law of the association prescribing mutuality of obligations and benefits as absolutely essential. The case of *Kennan v. Rundle*, 81 Wis. 214, 51 N. W. 426, treats the subject of mutual aid associations very fully, and in the opinion the leading authorities are cited sustaining this view, and we deem it unnecessary to refer to them specifically. The aid association, as a trustee and as a corporation, has no right to enter into a stipulation to return to a class of members their contributions at the expiration of 10 years, less what they have already been paid. The lower court, therefore erred in not granting the full relief prayed for by complainants, and did not err in enjoining the collection of assessments from the members at large for the payment of the 10-year policies.

On the cross-appeal of the complainants below the decree is reversed, and a decree will be here enterd granting the relief prayed for in their bill; and on the appeal of the respondents, below the decree of the lower court is affirmed.

Affirmed in part, and in part reversed and rendered.

WEAKLEY, C. J., and SIMPSON and ANDERSON, JJ., concur.